### The People *against* George Peacock.

Certain coal being consigned to *P.* of *New-York*, arrived there, and was claimed by another of the name of *P.*, who resided in the same city; but was not the true assignee; and he, knowing this, obtained an advance of money, on endorsing the permit for the delivery of the coal with his own proper name. *Held*, that this was forgery; and not the merely obtaining of goods upon false pretences.

The defendant was convicted of forgery at the last court of oyer and terminer in the city and county of *New-York*; and now stood committed for sentence, upon the following facts:

On the 8*th* of *May*, 1826, the brig *Rival* arrived from *New-Castle*, in the city of *New-York*, with a quantity of coal consigned to *George Peacock*, there being two per-

sons of that name residing in different streets of the city. The consignment was in truth intended, not to the prisoner; but the other person of the same name; and this was known to the prisoner. He, however, claimed the coal; and went to Mr. *Masters*, the consignee of the ship, and told him that the coal belonged to him (the prisoner.) He then went to Mr. *Pell*, said he had a quantity of coal, and wanted an advance. *Pell* made an advance of $450, on the defendant signing over to him the permit for the delivery of the coal. There was some slight proof at the trial, that the prisoner's name was *George W. Peacock*; but he had always been known and called in the city, where he had been in trade, by the name of *George Peacock*. He did not imitate the handwriting of any other person upon the permit, and did not represent himself as residing at any particular place.

On application of the prisoner's counsel, the oyer and terminer suspended the sentence, till the opinion of this court could be taken, whether the above facts warranted the verdict.

*J. D. Wheeler*, for the prisoner. The prisoner represented himself to be the owner or consignee of the coal, and the person named in the bill of lading; and endorsed his own name in his own proper hand.

Offences should be kept distinct, and not suffered to run into each other. Now, though this may be a fraud, indictable under the statute, (1 *R. L.* 410, *s.* 13,) as an obtaining of money upon false pretences, it is not a forgery. The latter is defined to be " the fraudulent making, or alteration of a writing to the prejudice of another man's right." (4 *Bl. Com.* 247.) The definitions in the other books are cubstantially the same; (2 *Ch. C. L.* 1023; *Stark. Cr. Plead.* 449; *East's P. C.* 853; 2 *Leach's C. L.* 898, *per Grose, J.* ;) and all the precedents of indictments, whether at the common law, or on English or American statutes, contain this allegation: " Did falsely make, forge and counterfeit." (2 *Ch. C. L.* 1053.) What is falsely forg-

ing? In common meaning it is a lie. But in the law it has a technical and confined meaning; and if one make a false coin or writing, it is a forgery. But if one puts his true name to a writing, how can that be called false? The representation that he is the very man, may be false; but not so as to the signature. That is true; and the averment of falsehood is not made out. *Counterfeit* implies imitation, or the use of a name not in existence or not known; and in either case this must be by writing. *Rex* v. *Parkes & Brown*, (2 *Leach*, 775,) does not come up to this case. *Parkes* wrote the note and signed *Brown's* name; and *Brown* was convicted of passing it, as the note of another. *Parkes* was found not guilty. I admit the signing of a fictitious name is forgery. (*Rex* v. *Dunn*, 1 *Leach*, 57. *Rex* v. *Taylor*, id. 257. *Rex* v. *Taft*, id. 172. *People* v. *Grant*, 3 *C. H. Recorder*, 143.) *Mead* v. *Young*, (4 *T. R.* 28,) was a civil action. The court were not called on to determine what shall constitute forgery; nor could they do so in that action. Fraud would vitiate the endorsement as well as forgery; and there was a plain fraud in the case. The court chose to call it a forgery; but it does not follow that it was indictable as such. That, it is true, was the case of a man's endorsing his own name as payee of a bill, representing himself to be another person intended by the drawer. In *Aickles' case*, (1 *Leach*, 438,) this very question arose in principle. One who claimed the same name, signed, representing himself to be another; and it was held not to be a forgery. This doctrine was much discussed in *Putnam* v. *Sullivan*, (4 *Mass. Rep.* 45,) by *Parsons*, Ch. Justice. One obtained notes endorsed in blank, by false pretences, and afterwards filled them up differently from what was intended by the endorser. Yet this was held not to be forgery.

The offence in this case is, in truth, merely that of falsely personating another; for which the defendant may be indicted at the common law; and various statutes have been made in *England* against personating in certain cases. (2 *Chit. C. L.* 1081.) The doubt really is, whether the

crime be false personating, or obtaining goods under false pretences ; not whether it be forgery.

*Talcott,* (attorney general) contra. The name of the defendant was not literally endorsed. It appears by the case, that *George W. Peacock* is convicted of endorsing the name of *George Peacock,* the name of another person ; not his own name. The doctrine in *Franklin* v. *Tallmadge,* (5 *John. Rep.* 84,) that the law knows of but one christian name, and the omission of the middle letter was therefore immaterial, is not borne out by the authorities, in the full extent to which it is laid down. A man may not have more than one name of baptism. This was the ancient rule ; and the case cited makes a wrong application of it. It does not follow that a man cannot have two names.

But if the defendant has signed his own name, still there is no difficulty in the case. The circumstance that he omitted to mention a place of residence, is only matter of evidence. Had he mentioned one, the falsehood might have been clearly made out from that circumstance. But when he says directly that he is the owner of the coal, which is as directly contradicted, it amounts to the same thing ; and there is no want of evidence.

In *East's C. L.* 969, a corrected account is given of *Aickles'* case, cited by the counsel from *Leach.* It is there put on the fraud or intent to deceive, and holden forgery by *East ;* but in truth the case never was decided.

The credit in the principal case was not given to the person, but to the permit ; which it was supposed gave a legal right to demand the coal. *Shepherd's case,* (*East's C. L.* 967,) taken in connexion with the case of *Aickles,* will show the force of this distinction. If the credit be given to the paper, it is beyond doubt a forgery. *Rex* v. *Parkes & Brown* was the same thing as if *Brown* had himself signed the note. It was signed by the name of *a T. Brown,* not by the name of *the T. Brown.* This was held to constitute the offence. *Mead* v. *Young,* cited by the counsel for the prisoner, involved the very question in dispute.

There the endorser put his own name, pretending to be the true payee, when in fact he was not; and the court unhesitatingly pronounced it a forgery. (2 *Russell on Crimes*, 1416. *East's C. L.* 962, 966, 856, *S. P.*)

*The Court*, intimated a strong inclination against the prisoner in the course of the argument; relying much on the authority of *Mead* v. *Young ;* and at another day,

The *Chief Justice*, said they had considered the case, and were satisfied that the indictment for a forgery was sustainable; and they, accordingly, advised the oyer and terminer to pass sentence upon the prisoner.