HENRY A. MANN, PLAINTIFF IN ERROR, v. THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANT IN ERROR.*

*Forgery — what constitutes.*

Where one executes and issues an instrument purporting on its face to be executed by him as the agent of a principal therein named, he is not guilty of forgery, either at common law or under the statutes of this State, even though he has in fact no authority from such principal to execute the same.

The fact that such principal is a corporation incapable of acting, except through its officers, by one of whom the instrument is executed, does not alter the rule.

WRIT OF ERROR to review the conviction and sentence of the plaintiff in error of the crime of forgery in the third degree.

The plaintiff in error was indicted for making the following instrument:

No. ——.

SARATOGA COUNTY TREASURER'S OFFICE, ⎱
BALLSTON SPA, *June* 16, 1875. ⎰

In pursuance of a resolution passed November, 1874, by the board of supervisors of Saratoga county, the county of Saratoga promises to pay, at the Saratoga county treasurer's office, on or before the 15th day of February, 1876, to First National Bank, Ballston Spa, or bearer, ten thousand dollars, at seven per cent interest, for value received.

$10,000. HENRY A. MANN,
*Treasurer.*

The instrument was made by the plaintiff in error, who was the treasurer of the county, and discounted at the First National Bank of Ballston, and the proceeds received by Mann. Mann had, in fact, no authority from the board of supervisors to make or issue the instrument.

*Nathaniel C. Moak,* for the plaintiff in error. On its face the instrument informed every person to whom it was presented that Mann had executed it as the agent of the county of Saratoga,

*Decided May, 1878.

and that its validity or invalidity depended solely upon his authority or want of authority to execute it. It did not purport to be the act of any one except himself. (*Supervisors of Rensselaer Co.* v. *Bates*, 17 N. Y., 242; *Donovan* v. *Mayor*, 33 id., 293; *Blackwell* v. *Ketchum*, 53 Ind., 184; *Silliman* v. *Fredericksburgh, etc.*, 27 Gratt. [Va.], 120.) At common law, it was well settled in England that one who signed an instrument purporting on its face to be executed by him as agent for a principal, was not guilty of forgery, though he had no pretense of authority from such principal. (2 Russell on Crimes [9th Am. ed.] 946, 947; 2 id., 942; *Queen* v. *White*, 1 Denison's Crown Cases, 208; 2 Cox Criminal Cases, 210; 2 Car. & Kirwan, 404, referred to at length, and 2 Russell on Crimes [9th Am. ed.], 946, 947; *Rex* v. *Arscott*, 6 Carr. & Payne, 408; 25 Eng. Com. Law Rep.; *Rex* v. *Story*, Russell & Ryan, 81; *Regina* v. *Watts*, 3 Brod. & Bing., 197; 7 Eng. Com. Law Rep., S. C., Russ & Ryan, 436; 2 Bishop Crim. Law [7th ed.], § 582; 2 Whart. Crim. Law [7th ed.], § 1432; 2 Arch. Crim. Prac. and Pl. [7th ed.], 819; 2 Arch. Crim. Prac. and Pl. [Pomeroy's ed.], 1854; 2 Cox & Saunders' Crim. Acts, 156; 2 Russell on Crimes [4th Eng., 9th Am. ed.], 941; Conner's Case, 3 City Hall Recorder, 59; Heilbonn's Case, 1 Parker 429; Crim. Rep., *Commonwealth* v. *Baldwin*, 11 Gray, 197; *State* v. *Young*, 46 N. H., 266.) The court erred in overruling the prisoner's motion that the court direct his acquittal, on the ground that none of the counts in the indictment alleged or set forth the alleged false instrument according to its "tenor," or in words or figures, but according to its "substance" and "effect" only. In an indictment for forgery, it is absolutely necessary to allege or set forth the alleged false instrument according to its tenor, or in words. It is not sufficient to set it forth according to its substance and effect. If the case comes within any of the exceptions known to the law, the particular fact which excuses must be mentioned. (*People* v. *Kingsley*, 2 Cowen, 522; *People* v. *Badgley*, 16 Wend., 56; 1 Bish. Cr. Proc. [2d ed.], §§ 559–561; 2 Bish. Crim. Proc. [2d ed.], §§ 403, 405, 434, 462; 2 Whart. Crim. Law [7th ed.] §§ 1468, 1474, 1475; 2 Burn's Justice [30th ed.], 636, Tit. Forgery; *Dana* v. *State*, 2 Ohio State Rep., 91; *Com.* v. *Sweeney*, 10 Serg. & Rawle, 173; *People* v. *Phelps*, 6

Hun, 432, 433, 434; *State* v. *Bryant*, 17 N. H., 326, 329; *State* v. *Cooke*, 52 Ind., 576, and cases cited; *Com.* v. *Clancy*, 7 Allen, 537; *State* v. *Witham*, 47 Maine, 165; *State* v. *Potts*, 9 N. J. [Law] Rep., 26; *Coxdale* v. *State*, 1 Head. [Tenn.], 139; *State* v. *Parker*, 1 Chipman, Verm., 298; *State* v. *Dourden*, 2 Dev. [N. C.], Law, 448; *U. S.* v. *Button*, 2 Mason, 464; *U. S.* v. *Foster*, 4 Bissell, 59.) The county had no power or authority to borrow money, or to issue paper similar to that set out in the indictment. (*Supervisors* v. *Weed*, 35 Barb., 136, 142; *Chemung Bank* v. *Supervisors*, 5 Den., 517, 523; *People* v. *Mitchell*, 35 N. Y., 552; *Thompson* v. *Lee Co.*, 3 Wall., 330; *Marsh* v. *Fulton Co.*, 10 Wall., 676; *Police Jury* v. *Britton*, 15 Wall., 566, 570; *Van Alstyne* v. *Friday*, 41 N. Y., 174; *Baker* v. *Loomis*, 6 Hill, 463; *Mather* v. *Crawford*, 36 Barb., 564; *People* v. *Lawrence*, 6 Hill, 245.) If such a paper was not valid and binding upon its face, no forgery in relation thereto could be committed. (*People* v. *Shall*, 9 Cowen, 778; *Cunningham* v. *People*, 4 Hun, 455; *People* v. *Harrison*, 8 Barb., 560; *Vincent* v. *People*, 5 Park., 88; 15 Abb., 234; *De Bow* v. *People*, 1 Den., 9; *People* v. *Galway*, 17 Wend., 540; *People* v. *Wilson*, 6 Johns., 320; *Com.* v. *Hinds*, 101 Mass., 209; *Vance* v. *Schuyler*, 6 Ills., 160; *Conner's Case*, 3 City Hall Rec., 59; *Falkner's Case*, 3 id., 65, 69, 70; 1 Bish. Crim. Law [6th ed.], § 748; 2 Bish. Crim. Law [6th ed.], §§ 533–544; 4 Cent. Law Jour., 529, and cases there cited; Waterman's Crim. Dig., 200, §§40–44.)

*Esek Cowen*, for the defendant in error.

LEARNED, P. J.:

The counsel for the people insists that the instrument set forth in the indictment, supposing it to have been signed by the authority of the county, would be the promissory note of the county; that is, that its legal character would be the same as if it had been signed, " County of Saratoga, by Henry A. Mann, Treasurer."

Assuming this to be correct, we first have to inquire whether the making of such an instrument would have been forgery at common law, or without reference to the phraseology of our statute. That is, when one executes an instrument purporting on its

face to be executed by him as agent for a principal named therein, and when he has in fact no authority from such principal, is he guilty of forgery? The English cases prior to chap. 28 of 24 and 25 Vict. hold that he is not.

In *Rex* v. *Arscott* (6 Carr. & Payne, 408), the prisoner had indorsed on a bill of exchange "Received for R. Aickman, G. Arscott." LITTLEDALE, J., said: "To forge a receipt for money is writing the name of the person for whom it is received. But in this case the acts done by the prisoner were the receiving for another person and signing *"his own* name." It was held that the offense was not forgery. The leading case of *Regina* v. *White* is reported in 2 Carr. & Kirwan, 404, and much more fully in 2 Coxe C. C., 210. In that case a bill of exchange payable to the order of Thomas Tomlinson was indorsed by the prisoner: "Per procuration Thomas Tomlinson, Emanuel White." He had no authority whatever from Tomlinson. It was held by the twelve judges, before whom the case was argued, that this was not a forgery. On the argument of the present case, the counsel for the people urged that the act of White could not have been forgery at common law, because it was the writing merely of a name; citing to that point *Regina* v. *Close* (7 Coxe C. C., 494). That was a case where, with fraudulent intent, a person had marked a painting with the name of a celebrated artist; and the court held that the act was not forgery. This was entirely different from the case of an indorsement of a note. In the one, the name, if genuine, has a legal effect and forms a contract. In the other it does not. The counsel for the people also cited 3 Coke, Inst., 169, where Lord COKE, speaking of the words "or make," in 5 Eliz. Ch., 14, says: "These be larger words than to forge, for one may make a false writing within this act, though it be not forged in the name of another, nor his seal nor hand counterfeited." But the meaning of that language is explained by Lord COKE in the next sentence, where he gives, as an illustration, that if A execute a deed of land in the manor of Dale to B, and if a person erase from the deed the letter D, and insert the letter S in its place, so that the deed shall read lands in the manor of Sale, this will be a forgery, or a false writing under seal, although it is not forged in the name of another, nor his seal nor hand counter-

feited.   There is nothing, then, in this passage of Lord COKE which weakens the force of the decision in *Regina* v. *White*.   It was in fact cited by the counsel for the prisoner in that case. The decision there seems to be on the very point involved in this present case, that an instrument thus made was not a forgery, although its statements were untrue.

This question came up in this State under the extradition treaty with England.   A bill of exchange had been made payable to the order of Charles Macintosh & Co.   It was indorsed by the prisoner, Heilbonn, as follows: "Received for Chas. Macintosh & Co., Alex. Heilbonn, No. 9 Vine street, Regent street, No. 73 Aldermanbury."   The prisoner had no authority to make the indorsement.   He was arrested under the provisions of that treaty, and was afterwards brought up on *habeas corpus* and discharged. The court said: "It is the essence of forgery that one signs the name of another to pass it off as the signature or counterfeit of that other.   This cannot be when the party openly and on the face of the paper declares that he signs it for the other." (*Heilbonn's Case*, 1 Parker Crim. Cas., 429; see, also, 2 Bish. Crim. L., § 582; 2 Wharton Crim. Law, § 1432; 2 Arch. Crim. Pr. and Pl., 819.)

To the same effect is the case of *Commonwealth* v. *Baldwin* (11 Gray, 197).   The prisoner made and delivered a note signed "Schouler, Baldwin & Co.," stating at the same time that he and one Schouler composed the firm.   There was no such partnership.   It was held not to be a forgery.   The court say: "As a general rule, however, to constitute forgery, the writing falsely made must purport to be the writing of another party than the person making it.   The mere false statement or implication of a fact not having reference to the person by whom the instrument is executed, will not constitute the crime."

So, also, in *The State* v. *Young* (46 N. H., 266), the court say: "The term falsely * * * has reference, not to the contents or tenor of the writing, or to the fact stated in the writing, * * * but it implies that the paper or writing is false, not genuine; fictitious, not a true writing; without regard to the truth or falsehood of the statement it contains."

The case of *Commonwealth* v. *Baldwin* (*ut supra*) is referred to

in a recent case in the same State. (*Commonwealth* v. *Foster*, 114 Mass., 311.) The court there say: "The distinction is plainly drawn between one who assumes to bind another, either jointly with himself, or by procuration, however groundless and false may be the pretense of authority so to do, and one who signs in such a manner that the instrument may purport to bear the actual signature of another party having the same name." And the court speak of "the *essential element* of an intent, when making a signature, or procuring it to be made, to pass it off fraudulently *as the signature of another party* than the one who made it."

It seems to us that these authorities, in the absence of anything to the contrary, are sufficient to show that, aside from our statute and at common law, such an offense is not a forgery. The statement was untrue. But every untrue statement is not a forgery.

It is true, as urged by the counsel for the people, that it has been held in England that a man may be guilty of forgery in ante-dating his own deed. (*Queen* v. *Ritson*, Law Rep., 1 C. C. R., 200, and cases there cited.) But that does not seem to touch this question. So it has been held that a man may be guilty of forgery, although the person whose name he has forged has the same name with his own. (*People* v. *Peacock*, 6 Cow., 72, and cases there cited.) The forgery consists in signing the name of the other person unlawfully. Thus, if a note payable to John Smith's order should fall into the hands of a John Smith who was not the payee, and he should indorse it knowing that he was not the payee, the fact that he bore the same name would not excuse him. He would have falsely signed the name of the payee just as much as if his own name had been Brown. To prevent any doubt on this point, our statute has provided for such a case. (2 R. S., m. p., 674, § 41.)

The counsel for the People further urges that even if the prisoner's offense were not forgery at common law, it is so under the statutes of our State (2 R. S., m. p., 673, § 33); and he quotes the words of the revisers as indicating an intent to extend the scope of the law "to reach every case of forgery that has ever been committed, or that ever can be committed, and to afford a definite and distinct rule." (Revisers' Notes.) It will be seen, however, on reading the whole note, that the perplexities against

which the revisers intended to guard in future, were those which arose from the fact that previous laws had enumerated and specifically described many instruments which might be the object of forgery. "In principle," they say, "there can be no difference in the injury to society or to an individual, or in the degree of moral turpitude, between the *forgery of one instrument and another*, by which the property, rights or interests of any one is affected."

It was in order to embrace in general language all instruments which might properly be the subject of forgery, and not to establish any new kind of crime, or to change the previous rule as to what constitutes a false making, that this section was proposed by the revisers. The facts that the common law was such as we have seen it to be, and that it must have been known to be such to the revisers, and to the Legislature, and that no change was introduced, such as was afterward adopted in England (as above cited), may indicate that no change in the law was intended. Of course, we do not overlook the date of the decision in *Regina* v. *White* (1847). But that decision declared the previous law. (Maddock's Case [1805]; Russ. on Crimes, 499.)

The language of the statute material to the question is: "Any person who * * * shall falsely make, alter, forge or counterfeit * * * any instrument or writing, being or purporting to be the act of another, by which," etc. The counsel for the people urges that the writing in this case purports to be the act of another, viz., of the county of Saratoga, and that it was falsely made by the prisoner. That argument was used in *Regina* v. *White* (*ut supra*), as appears by the report: "POLLOK, C. B. It purports to be the name of a party, written by his authority, and it is his name, written without that authority. Willmore (for the prisoner): Rather it purports to be the writing of the prisoner, and it is so." And so the court finally held. Now, it is true that so far as *civil* obligations and rights are concerned, we are accustomed, in order to express the binding effect of an agent's acts, to say that the act of the agent is the act of the principal. This is a convenient way of stating, in brief language, that, when an agent is authorized, his act binds, not himself, but his principal, *just as if it were the act of the principal*. But we do not mean that the act is literally that of the principal.

The instrument in question purported to be the act of Henry A. Mann. It may be that it purported to be legally binding on the county of Saratoga. But the *act* — that is, the doing the physical act as distinct from the legal effect — was the act of the prisoner. There is undoubtedly a sense, as urged by the counsel for the people, in which such an instrument may be said to purport to be the act of the county. But that is a statement of the legal effect. As a matter of fact, the instrument purports to be the act of Mann. He signed it in his own name, adding the title of his office — an office which he legally held.

The counsel for the people cites the case of the *People* v. *Graham* (6 Park. Crim. Cas., 135.) In that case the Travelers' Insurance Company was accustomed to deliver to the prisoner what are called accidental policies. These had the signatures (printed or written) of the president and of the secretary, and of a general ticket agent. The prisoner was the agent of the company for the purpose of issuing these policies. The only thing to be done by him on issuing a policy was to stamp it with the date, and with the words "General R. R. ticket office, J. Graham, Buffalo." The policy was to run for three days from date.

One Hunt was killed on the 13th of November; on the next day the prisoner, with intent to defraud, issued to one Waner one of these policies, and stamped it with the date of November 13th, in order that it might be enforced as a policy issued to Hunt on that day. This was held to be a forgery. The date was a material addition. The insertion of a false date was like the alteration of a date after the issue of the instrument.

But that instrument had been in fact executed by the president and secretary of the company. The insertion of a false date was an unlawful writing above the valid signatures of the officers, in the body of the instrument, of words which the prisoner had no right to put in that place. The case is analogous to that where a person in possession of a genuine signature, in blank, falsely writes an instrument over such signature. But it has no analogy to the present, where the prisoner writes an instrument openly and avowedly in his own name, only asserting therein that he is agent for another, and that therefore the other will, by virtue of the agency, be bound by the instrument.

In the case last cited, the instrument did not in any sense purport to be the act of the prisoner. It purported to be, as it was in fact, the physical act of the president and secretary, and the legal act of the company. It is true that, in that case, the indictment charged that the instrument purported to be the act of the company. No question was made on that point, and the indictment charged the forging, not the alteration of the instrument. But the opinion of the court speaks of the act of the prisoner as an alteration of, or material addition to, the instrument.

Again, it is urged by the counsel for the people that section 45, 2 R. S., m. p., 675, supports the view of the defendants in error. That section, among other things, provides that " every signature of an individual, firm or corporate body, * * * shall be deemed a writing," etc.

It is urged that a corporate body can sign only through agents; that, therefore, a corporate signature can never purport to be the physical act of the corporation; hence that the words " purporting to be the act of another," are shown to include the case of one who, without authority, signs the name of a corporation; and, therefore, they must be held to include every case where one without authority signs the name of another, even though he adds his own name as agent. This section, however, ought to be construed as intended rather to embrace all the various kinds of signatures which may be forged, than to establish a new rule as to the crime.

It might be intended to remove any doubt, among others, in a case where A, not being authorized, should sign the corporate name of some body, adding " By C, president;" or in a case where A, without authority, should sign the corporate name of some body without any addition thereto whatever. In all the cases that may be supposed, there runs this distinction: did the person who is accused of crime put forth the instrument with the fraudulent pretense that it was written or signed by some person other than himself, or did he plainly state that he was the writer or signer, but falsely assert at the same time therein that his act was obligatory on some other person? These two classes of acts seem to be essentially different, as well in their criminality as in their dangerous effect on society.

Thus, suppose that A makes a note, signing himself " A,

agent," when in fact he is not agent for any one. If we adopt the argument of the counsel for the people, this would be an instrument purporting to be the act of another; that is, of the principal not named, and the writer would be guilty of forgery.

Section 45, above referred to, seems to be intended to prevent any question whether an instrument partly written and partly printed, or whether a mere signature would be included in the language of the previous sections, which spoke of writings and instruments. In the effort to remove any doubt, it declares that a signature shall be a writing, and amplifies by saying the signature of an individual, firm or corporate body. But while a signature is, by this section, declared to be a writing, yet by section 33 such signature, in order to make the party guilty of this crime, must "purport to be the act of another." And when the signature, as in this present case, purports to be the signature of the very person who made it, it does not purport to be the act of another.

Hence this section, in declaring that a mere signature is a writing under the statute, shows that the words "purporting to be the act of another" refer to the physical act, and not to the legal effect. For when an instrument is *lawfully* executed by an agent, the signature is the act of the agent, even though we speak of the instrument as, in legal effect, the act of the principal. And here we may notice that a subsequent section — 55 (53) of the same title — makes it a crime to obtain from any person any valuable thing "by color of any false token or writing." To constitute a crime under this section, it is not necessary that the false writing should purport to be the act of another. Its falsity is enough. This section, therefore, provides for the case of a false statement, while the section which we have been considering provides for the case in which there is not only falsity, but the additional circumstance, also, that the offender has attempted to put off on the public his own writing as the writing of another.

These reasons bring us to the conclusion, without any examination of the other points raised by the counsel for the plaintiff in error, that the conviction cannot be sustained.

However wicked may have been the conduct of the plaintiff in error; however disgracefully he may have betrayed the trust con-

fided in him by his fellow-citizens, we have to do with only one question: Was he rightfully convicted of forgery? He may still claim the protection of the law, however much he may have disobeyed it. Whatever his misdeeds, he must not be punished for a crime which he has not committed.

The judgment must be reversed.

WESTBROOK, J.:

Continuous labor in circuit prevents any elaborate discussion by myself of the interesting question which this case presents. No effort in that direction will be attempted, but a simple, brief statement of the line of argument controlling my action is all that the very limited time at my command allows.

At the Washington County Oyer and Terminer, on the 16th day of May, 1877, the plaintiff in error was convicted of the crime of forgery in the third degree, and sentenced to imprisonment for the term of five years. The alleged forgery was the making by the said plaintiff in error, on the 16th day of June, 1875 (he at that time being the county treasurer of Saratoga county), a promissory note for the sum of ten thousand dollars, by the language of which the county of Saratoga promised to pay that sum, in pursuance of a resolution of the board of supervisors thereof, of the date of November, 1874, and which was signed by himself thus: "Henry A. Mann, Treasurer."

It will be seen, from this brief statement of facts, that one of the points involved is this: When an instrument is really, in all its parts, written, signed and executed by the individual by whom it purports to be written, signed and executed, and the falsity thereof consists, not in the simulation or counterfeiting of the act of another, but in the false assertion which the instrument contains, that he, the writer and signer thereof, is authorized so to make and sign it in behalf of another, as it purports to be; upon the negotiation of such instrument by the person who has so prepared it, is that person guilty of the crime of forgery, or of obtaining money by a false pretense?

In answering the question propounded, the ordinary and popular meaning of the word "forge" must not be forgotten. When a note or instrument is spoken of as "forged," it is understood

to be a *counterfeit* one, and this understanding is in conformity with the definitions given to the two words by our best lexicographers. (Webster's Dictionary, Worcester's Dictionary, Imperial Dictionary, etc.). Whenever, therefore, the expression "forged note," or "counterfeit note," is used, we understand the speaker to refer to an instrument by which some one has undertaken to utter and pass, as the genuine and personal act of another, something which he has himself prepared in the similitude and likeness of the other's act, and by such similitude and likeness which he has endeavored to impress upon the spurious instrument to deceive and defraud. In other words, forgery is the attempted imitation of another's personal act, and by means of such imitation to cheat and defraud; and not the doing of something in the name of another, which does not profess to be the other's personal act, but that of the doer thereof, who claims and insists by and in the act itself, that he is authorized to obligate the individual, whom he is assuming to obligate precisely as he undertakes to do.

The definition of the crime of forgery which has been given is well sustained by authority. (2 Russell on Crimes [9th Amer. Ed.], 946, 947; *Queen* v. *White*, 1 Denison's Crown Cases, 208; 2 Cox's Criminal Cases, 210; 2 Car. & Kirwan, 404; *Rex* v. *Story*, Russell & Ryan, 81; *Rex* v. *Arscott*, 6 Carr & Payne, 408; 2 Bishop's Crim. Law [7th ed.], § 582; 2 Whart. Crim. Law [7th ed.], § 1432; 2 Archbold Crim. Pr. & Pl. [7th ed.], 819; Pomeroy's Editions of Archbold, vol. 2, 1584; *Conner's Case*, 3 City Hall Recorder, 59; *Heilbonn's Case*, 1 Parker's Criminal Reports, 429; *Commonwealth* v. *Baldwin*, 11 Gray, 197; *State* v. *Young*, 46 N. H., 266.) The learned counsel of the people, however, whilst not denying the general and ordinary definition of the crime of forgery to be as stated, nevertheless insists that the act of Mann is within the statute definition of the crime, and that therefore he was properly convicted. The statute he refers to reads: "Every person who, with intent to injure or defraud, shall falsely make, alter, forge or counterfeit * * * any instrument or writing, being or purporting to be the act of another, by which any pecuniary demand or obligation shall be, or shall purport to be created, increased, discharged or diminished, * * * by which

false making, forging, altering or counterfeiting, any person may be affected, bound, or in any way injured in his person or property, upon conviction thereof, shall be adjudged guilty of forgery in the third degree." (3 R. S. [6th ed.], page 944, § 34.) This provision, it is insisted, has enlarged the crime of forgery, and as Mann falsely made a note, which counsel claims purported " to be the act of another," he is guilty of the crime of forgery.

In considering this point, it will be observed that counsel assume that the plaintiff in error has done the very thing which the statute declares to be a crime, whilst the truth is otherwise. Mr. Mann has not falsely made a note, which purports " to be the *act* of another." The " act "— *i. e.*, that which was done — purported to be his own, but one which he was authorized to do for, and in behalf of another. The reader of the instrument could not misunderstand it. By its terms Mann declares that he has made the writing, but he has so made it for the county whose officer he was, and by the authority of those representing it. The paper may be false and untrue in its statements, but the making is not false by reason of the fact that it purports to have been made by some other person, which must be the case if this conviction is upheld. In short, the statute seems to us to require that, in order to constitute a crime thereunder, an instrument must purport to have been made by some individual or body other than the party who in fact makes it, which act of his own he endeavors to impose upon the public as the genuine one of him or it whose it professes to be. Thus construing the statute, it is not only in entire harmony with the well-understood definition of the crime of forgery at common law, but in addition, also, it does not compel a court to call that which a party, in and by the act complained of, declares to be of his own making, to be the forging, counterfeiting, or simulating the act of another.

There is also another argument worthy of consideration. The statute relied upon by the counsel for the people is a part of article 3 of title 3 of chapter 1 of part 4 of the Revised Statutes. The chapter is entitled, " Of crimes and their punishment;" the title is entitled, " Of offenses against property punishable by imprisonment in a State prison;" and the article, of which the section forms a part, is entitled, " Of forgery." Being a part of

the statutes defining a particular species of crime, which is itself a part of another division consisting " of offenses against property punishable by imprisonment in a State prison," it should be read so as not to contradict its own specific title (" of forgery "), and also so as not to interfere with any other defined offenses which are also " offenses against property," and also " punishable by imprisonment in a State prison." The article succeeding that of which the section forms a part, is the fourth, and is entitled, " Of false personating another and cheats". (3 R. S. [6th ed.], 947). Its fifty-eighth (53d of old) section provides that " every person, who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by any other false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property or valuable thing, upon conviction thereof, shall be punished by imprisonment in a State prison not exceeding three years, or in a county jail not exceeding one year, or by a fine not exceeding three times the value of the money, property or thing so obtained, or by both such fine and imprisonment."

Is it not entirely clear, if the proof shall show, that " with intent to cheat or defraud another," Mann obtained the money upon the note which he made, he was directly within the letter of this provision? No opinion, as this question has not been argued, is expressed upon the need of other proof being given in connection with the note to insure the conviction of Mann, if he can be convicted at all, under this statute; but it seems reasonably clear that if it can be shown that the making of the note was with the fraudulent intent aforesaid, and that " designedly," and " by color of" this note, which must then be a " false * * * writing," he obtained from a " person * * * money," that this case is covered. It is, therefore, very evident that for the offense of making an instrument in the name of another, which on the face thereof is stated not to be the personal act of the party purporting to be obligated, but of another, in his behalf and by his authority, express provision has been clearly made, and consequently another and prior statute should not be so construed as to cover and occupy the same ground. Such a rendering of the statute law would subject the Legislature to the imputation of having

twice provided for the same crime, and of having prescribed two different degrees of punishment therefor. To both sections a construction can be given, which is in entire harmony with their language, and which preserves the well-known and understood common-law distinction between the crime of obtaining money upon a forged note, or upon one which involves only a false pretense. A forgery necessarily is also a false pretense, but the latter, when embodied in a writing, does not necessarily involve the former. The crime of forgery is only completed when the falsity of the instrument consists in the forging or counterfeiting the act of the other; and that of false pretense, when it springs out of a transaction like the present, is perfect when the intent " to cheat or defraud another " is shown, and the party insists by the writing, that whilst the act of making is his own, yet such making is by him, for and in behalf of another, whom it purports to bind, and which assertion he knows is false.

The conviction of the plaintiff in error should, in my opinion, be reversed, and the prisoner discharged.

Present — LEARNED, P. J., WESTBROOK and OSBORN, JJ.

Judgment and conviction reversed, and new trial ordered.