## NELSON *v.* STATE

[No. 156, September Term, 1960.]

*Decided February 21, 1961.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Frank Petro* for the appellant.

*Stedman Prescott, Jr., Deputy Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, Saul A. Harris, State's Attorney for Baltimore City,* and *Robert V. Lazzaro, Assistant State's Attorney,* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

Appellant was found guilty generally by the court sitting without a jury on seven indictments, each of two counts charging, respectively, forgery and larceny of the checks forged. He was sentenced to three years' imprisonment on each conviction, the sentences to run concurrently. He claims on appeal, as he did below, that under the facts he committed neither crime.

Appellant did business as an individual under the trade name of The Nelson Co. at 1110 Division Street, Baltimore. His firm had sandblasted and restored a fire engine for The Glenn L. Martin Company in 1955, and had been paid in full. He had done no business with Martin before and has done none since. A corporation called The Nelson Company, with which appellant had no connection, manufactured packing and shipping containers which it regularly sold to the Martin Company. Its office was in the Standard Oil Building, Baltimore. In 1956 on seven occasions between May and September, Martin mailed to the Division Street Nelson Company a check for several thousand dollars (the total of the seven checks was some $36,000), each payable to the order of "The Nelson Company, 1110 Division Street, Baltimore 1, Maryland." The checks were intended for the Nelson Company in the Standard Oil Building in payment for containers Martin had bought from it. Martin used addressograph plates to denominate the payees of its checks. Every six months the plates of inactive suppliers were removed. Because the employees of the Martin Company in its remittance section were under the impression that the Standard Oil Building was being vacated and that the Nelson container company had moved from there to Division Street, its plate was removed and the checks in payment of the goods Martin had bought from it were sent to Division Street.

On several prior occasions invoices and bills of lading meant for the Nelson Company in the Standard Oil Building had come to Division Street and the secretary-bookkeeper, at appellant's direction, had put them in an envelope and mailed them to the Standard Oil Building. The secretary-bookkeeper testified that when a Martin check for $5,931.45

arrived in the mail on May 22, 1956, she was surprised because she "knew it was not ours." She handed it to her employer. The ensuing dialogue was: appellant: "This is great, we can really use it;" secretary: "But it is not ours;" appellant: "This is just what we need;" secretary: "But it is not our money;" appellant: "Don't you worry about that. I will just put it in the bank." He directed the secretary to deposit the check in the firm's bank account. She took each of the subsequent six checks in to appellant when they arrived and each time he told her to deposit the check. The checks were endorsed with the firm's rubber stamp, at appellant's direction.

The $5,931.45 check was regarded by appellant as practically "manna from Heaven." He had suffered business reverses, was being pressed by his trade creditors and was having income tax trouble with the Federal government. He used the proceeds from the checks to pay the government and the accounts payable of business creditors "who had trusted me." He testified that he knew the money the checks represented was not his money and that it was intended for another Nelson company, but said he felt Martin had more money than his creditors and he would repay it—"I felt I had one big creditor instead of a number of small ones." [1]

Appellant's defense on the forgery charges is that causing the name of his firm to be impressed on the checks was not a crime since in so doing he did not purport to be other than the person he was. When asked on the stand if he thought he was committing a crime when he used the checks, he replied: "Certainly not. I signed my own signature."

At common law forgery and false pretense were alike catalogued as "cheats," and, certainly, false pretense accomplished by writing is the heart of forgery.[2] A succinct and accurate

---

1. Civil aspects of the case are detailed in Martin Co. v. Fidelity-Baltimore National Bank, 218 Md. 28, in which it was held that Martin's carelessness estopped it from collecting from the drawee bank. For the purpose of the decision it was assumed that the endorsements were forged.

2. Writing at common law was used in a broad sense and was not limited to handwriting but was extended to typewriting, print-

definition of forgery is "the fraudulent making of a false writing having apparent legal significance." Perkins, *Criminal Law,* 291.[3]

It has long been determined that the writing of one's own name with intent to defraud may constitute forgery. Sir William Blackstone said (4 Comm. 250) : "If a person puts his own name to an instrument, representing himself to be a different person of that name, with an intent to defraud, he is guilty of forgery." Subsequent commentators have not found him to have been wrong. 3 Underhill, *Criminal Evidence,* Sec. 778, p. 1785 (5th Ed.) ; 2 Wharton, *Criminal Law,* Sec. 864 (12th Ed.) ; Clark and Marshall, *Crimes,* Sec. 12.34, p. 848 (6th Ed.) ; Perkins, *Criminal Law,* 298; *Hochheimer on Crime & Criminal Procedure,* Sec. 59, pp. 56-57; 37 C.J.S. *Forgery,* Sec. 9; 23 Am. Jur. *Forgery,* Sec. 9. The cases support the texts. In *United States v. Long,* 30 Fed. 678, 679, the court instructed the jury that "if a bill of exchange is payable to A. B., or order, and it comes to the hand of a person named A. B. who is not the payee, and who fraudulently indorses it for the purpose of obtaining the money, this is a forgery." And continued: "To apply to this case: If this money-order had been payable to John A. Long, and it came by mistake of the mails or otherwise to the hands of the prisoner, John A. Long, who, knowing it was not intended for him, but for another John A. Long, indorsed it, or signed the receipt for it, with the fraudulent purpose to get the money on it, he would be guilty of forgery." Many

---

ing, engraving, and so forth (Commonwealth v. Ray, 69 Mass. 441; Perkins, Criminal Law, 292; Clark and Marshall, Crimes, Sec. 12.31, p. 842 (6th Ed.)). The same view has been taken of the term writing as used in the Uniform Negotiable Instruments Act (in Maryland Code (1957), Art. 13, Secs. 51-52). The cases are collected in annotations in 7 A. L. R. 672 and 46 A.L.R. 1498.

3. Other definitions are: "Forgery at the common law is the fraudulent making or alteration of a writing to the prejudice of another's right." 3 Underhill, Criminal Evidence, Sec. 770, p. 1769 (5th Ed.). "Forgery is the false making, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability." Clark and Marshall, Crimes, Sec. 12.31, p. 841 (6th Ed.).

other cases have applied the law as expressed in the *Long* case.[4]

The question of the intent with which a name is affixed to an instrument is for the trier of fact to determine. *Lyman v. State,* 136 Md. 40, 47. The trial judge in the case before us properly could have found from the evidence that appellant caused his name to be impressed on the checks which came to him by mistake, knowing them to have been intended for another, and with the intent and purpose to defraud. Beyond the obvious fact that by endorsing and depositing the checks he was obtaining immediately the funds of another, intent to defraud could have been found from the inference the evidence permitted that he had neither the present ability nor any reasonable expectation of future ability to repay what he was appropriating by the forgeries. *Putinski v. State,* 223 Md. 1.

We need not decide whether the evidence justified a finding that the appellant committed the crime of larceny, although in passing the question we do not intend even an intimation that it did or did not.

The verdicts and sentences on each of the indictments were general. It was said in *Meade v. State,* 198 Md. 489, 491: "The appeal here is based upon the allegation that there was absolutely no proof of the essential averments of the indictment, and the verdict of the trial court was therefore clearly erroneous. The sentences imposed were general, so that if

---

4. Cases which are in general accord include Mead v. Young, 4 T. R. 28, 100 Eng. Rep. 876; Beattie v. National Bank of Illinois, 174 Ill. 571, 66 Amer. St. Rep. 318; People v. Rushing (Cal.), 62 P. 742; Barfield v. State, 29 Ga. 127; Graves v. Amer. Ex. Bank, 17 N. Y. 205; International Union Bank v. National Surety Co. (N. Y.), 157 N. E. 269, 271; People v. Peacock (8 N. Y. C. L. 837), 6 Cow. 72; Cohen v. Lincoln Savings Bank (N. Y.), 10 N. E. 2d 457; Citizens Union National Bank v. Terrell (Ky.), 50 S. W. 2d 60, 63; S. Weisberger Co. v. Barberton Savings Bank (Ohio), 95 N. E. 379, 380; United States v. National City Bank (D. C. S. D. N. Y.), 28 F. Supp. 144, 147; United States v. Union Trust Co. (D. C. Md.), 139 F. Supp. 819, 822, 825; Fulton National Bank v. United States (5th Cir.), 197 F. 2d 763; Fulton National Bank v. United States (C. C. A. 5th), 107 F. 2d 86. Cf. Lyman v. State, 136 Md. 40, 45.

the evidence is sufficient to support a verdict under any of the counts of the indictment, the judgments will have to be affirmed." And in *Felkner v. State,* 218 Md. 300, 305, we said: "Since the evidence as to uttering and false pretenses was sufficient to support the general verdict of guilty, its insufficiency to prove forgery (assuming that insufficiency) would not invalidate the verdict. This Court, in *Medley v. Warden,* 210 Md. 649, 652, said: 'It is a complete answer to the petitioner's contention that the proof of uttering, which is not denied, would alone support the general verdicts.'

"If a sentence imposed under the general verdict of guilty under an indictment of several counts does not exceed the permissible maximum under the unchallenged counts, the accused may not successfully complain. *Harris v. State,* 182 Md. 27, 31-32."

The judgments appealed from must be affirmed, whether or not appellant was guilty of larceny, since appellant's convictions on the charges of forgery were valid and the three-year concurrent general sentences imposed were well within the statutory maximum for that offense (ten years' imprisonment under Code (1957), Art. 27, Sec. 44). No useful purpose would be served, therefore, by deciding abstractly the law of larceny under the facts of the case.

*Judgments affirmed, with costs.*