## COLE *v.* STATE

[No. 275, September Term, 1962.]

112

*Original opinion filed June 26, 1963.*

*Motion for rehearing filed July 22, 1963, denied October 7, 1963; motion for modification of opinion granted and original opinion modified in accordance with, and by, revised opinion filed October 8, 1963.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*Francis N. Iglehart, Jr.,* with whom was *Sidney C. Miller, Jr.,* on the brief, for the appellant.

*Robert C. Murphy, Deputy Attorney General,* with whom were *Thomas B. Finan, Attorney General, Peter J. Carpenti,*

*Special Attorney,* and *Frank H. Newell, III, State's Attorney for Baltimore County,* on the brief, for the appellee.

SYBERT, J., delivered the opinion of the Court.

The Circuit Court for Baltimore County, sitting without a jury, convicted the appellant, Clarence R. Cole, on the first count of each of four indictments charging the forgery of a check, and acquitted him on the other two counts of each indictment, charging uttering and obtaining money by false pretenses, respectively. He was also convicted under a criminal information charging conspiracy to obtain money by false pretenses. On this appeal he seeks reversal of the four forgery convictions on the ground that there was no evidence that the forgeries occurred within this State, or in Baltimore County. He also maintains that the evidence was insufficient to prove that he actually forged one of the checks, and claims there was insufficient evidence to prove the conspiracy.

Cole and two other defendants in various cases—Roland E. Bell and John E. Bell—were tried together. A fourth defendant, Benjamin Hill, was not tried at the same time because he lacked counsel. The trial embraced separate indictments charging some or all of those tried with involvement in the following events (all of which occurred in Baltimore County) : the cashing of two forged checks at the Cristobal Inn; the cashing of two forged checks at the Geresbeck Supermarket; the cashing of four forged checks at the Sherwood Liquor Store; the cashing of one forged check at Goldberg's Department Store; and the cashing of two forged checks at Baker's Tavern. The criminal information charging all four defendants with conspiracy to obtain money by false pretenses was also tried at the same time as to Cole and the two Bells. It arose out of an attempt to cash a check at the Midway Inn.

The appellant, Cole, was convicted of forging the four checks cashed by the Cristobal Inn and the Geresbeck Supermarket, and as a participant in the conspiracy case. The State produced the following evidence. The checks passed in the inn (checks nos. 17041 and 17048) and those passed in the supermarket (checks nos. 17044 and 17050) were all checks of the Daniels

Motor Freight Company drawn on an Ohio bank, were all dated May 3, 1962, and, according to the testimony, were all passed on May 14, 1962 by unidentified persons. These four checks, as well as two other checks of the same company involved in one of the other cases (checks nos. 17043 and 17049), all purported to be signed by "Nathaniel J. Lee" as authorized signer for the company. Kenneth J. Lee, the office manager of the company, testified that 250 checks, with serial numbers including those of the six involved, were missing from the company office, although he could not say when they had disappeared, and that the signatures "Nathaniel J. Lee" were unauthorized. A handwriting expert of the Federal Bureau of Investigation testified that he had compared the signatures on the six checks with three pages of handwriting samples obtained from Cole, and that it was his conclusion that Cole had written the signatures.

In the case involving the Sherwood Liquor Store, the proprietor, Horner, identified Cole and two of the other defendants as three of four men for whom he had cashed four forged checks in his store on June 7, 1962. These purported to be checks of B & D Contractors, Inc., of Reisterstown, Maryland, drawn on a bank in Baltimore City. However, the court granted a motion for acquittal in that case of the three defendants on trial because the State offered only one of the checks in evidence and Horner was unable to say which defendant had passed it, and no evidence was presented as to who had forged that or the other three checks.

Likewise, in the Goldberg's Department Store case, a verdict of acquittal was entered when the testimony showed that Cole had passed a forged B & D Contractors check on June 16, 1962 although Roland Bell was charged as the utterer in the indictment, and no proof was offered as to the forger.

In the Baker's Tavern case, involving the two forged Daniels Motor Freight Company checks—nos. 17043 and 17049—mentioned above, verdicts of not guilty were entered because the prosecuting witness did not appear in court.

Appellant contends that the Circuit Court for Baltimore County was without jurisdiction to try him in the four for-

gery cases. It is his position that the forgeries were not affirmatively proven to have been committed within the State of Maryland, and that even if such could reasonably be inferred there was insufficient proof that they were committed in Baltimore County. The courts have long recognized the difficulty of proving by direct evidence the location where a forgery actually occurred, due to the very nature of the act itself. See Anno. 164 A.L.R. 621, 649-660. Justice Story long ago pointed out this difficulty in the case of *United States v. Britton*, 24 Fed. Cas. 1239, 1241, No. 14,650, 2 Mason 464 (1822), wherein he stated "[a]cts of this sort are not usually done in the presence of witnesses; but in places of concealment, with a view to prevent detection; and it is rare that the government can offer any evidence of the place of the forgery, except that which arises from the fact of the utterance of the forged instrument". Because of this obvious difficulty, courts have relied on various presumptions or inferences to permit a finding of proper jurisdiction and venue, in order to make prosecution possible. Usually these presumptions or inferences result from the defendant's possession or uttering of the forged instrument. Thus it has been said that "[w]hen a forged instrument is uttered, or attempted to be uttered, it is presumed prima facie to have been forged in the county where it is so uttered, or the attempt made", *State v. Douglas*, 278 S. W. 1016, 1022 (Mo. 1925). See also *Commonwealth v. Leib*, 76 Pa. Super. Ct. 413 (1921), and cases cited. In *Medley v. Warden*, 210 Md. 649, 123 A.2d 595 (1956), this Court said (at pp. 652-653 of 210 Md.) :

> "It is stated in 23 Am. Jur. § 37, that as between states forgery is deemed to be committed at the place where the false instrument is uttered. Jurisdiction over the subject matter may attach where acts are performed in one state with the intention of producing an illegal effect in another, or where the crime is consummated. *State v. Kriss*, 191 Md. 568, 575; *Restatement, Conflict of Laws*, § 65 and § 428. See also *Bloomer v. State*, 48 Md. 521, 535, and *Stout v. State*, 76 Md. 317. It is not a fatal objection that there may be concurrent jurisdiction at the place where the of-

fense is begun. 1 *Wharton, Criminal Law* (12th ed.),
§ 334. In 1 *Wharton, Criminal Evidence* (12th ed.),
§ 92, it is also said: 'In the absence of evidence to the
contrary, it may be presumed that a forgery was com-
mitted where the forged instrument was first uttered
by the defendant or found in his possession.' * * *
In any event, the jurisdictional requirement was sat-
isfied by the fact that the offense of uttering occurred
in the localities where the charges were laid."

Other courts have recognized a similar presumption from the
fact of the defendant's possession of the forged instrument.
Thus it was said in *Spencer v. Commonwealth,* 2 Leigh 751
(Va. 1830), that "[p]ossession of a forged instrument is prima
facie a presumptive proof that the forgery was committed at
the place where such possession was first made known." See
also *Nix v. State,* 20 Okla. Crim. Rep. 373, 202 Pac. 1042, 26
A.L.R. 1053 (1922). Other authorities are not willing to state
the proposition as a presumption of law but say that in the ab-
sence of other evidence, possession or uttering of a forged in-
strument by the defendant within the jurisdiction of the court
is "strong evidence" that it was forged therein. *People v. Win-
throp,* 264 Pac. 263 (Cal. App. 1928), and cases cited. Cf.
*Conley v. United States,* 23 F. 2d 226 (1928), and *People v.
Adams,* 132 N.E. 765 (Ill. 1921). Of course, even when the
various presumptions are recognized, they can be overcome by
evidence or circumstances to the contrary, *United States v.
Britton, supra.*

The present case is unusual in that the defendant was not
shown by direct evidence to have either possessed or uttered
within the State of Maryland the four Daniels Motor Freight
checks which he was convicted of forging. Whether the pre-
sumption, discussed above, as to the uttering of a forged instru-
ment should be extended to cover a situation where the defend-
ant-forger was not himself the utterer, or even whether a pre-
sumption can be based on the fact that the forged checks were
found in a forged state in Maryland, is open to question. How-
ever, we do not have to answer that problem in the present
case, since there was sufficient circumstantial evidence to per-

mit the trial judge to draw a reasonable inference that the checks were forged within the State of Maryland. Jurisdiction, as well as venue, may be established by circumstantial evidence. Cf. *Breeding v. State*, 220 Md. 193, 200, 151 A.2d 743 (1959). The facts in the present case show that the checks involved had disappeared from the Baltimore City office of the Daniels Motor Freight Company,[1] that the checks were all uttered in Baltimore County, and within several days after the date appearing on them, and that the appellant had forged them. While the fact that the appellant was shown to have uttered certain other bogus checks in Baltimore County about three weeks later may have little, if any, probative force, we think that the other facts just mentioned were sufficient, in the absence of any evidence to the contrary, to enable the trial judge to find that the forgery took place in Maryland. Hence we find no merit in the appellant's contention as to jurisdiction. In regard to the question of venue, as distinguished from that of jurisdiction, any objection as to improper venue was waived by pleading to the charge. *Medley v. Warden, supra; Kisner v. State*, 209 Md. 524, 122 A.2d 102 (1956). Cf. *Martel v. State*, 221 Md. 294, 157 A.2d 437 (1960).

The appellant's claim that the evidence was insufficient to prove that he had forged check no. 17044, one of the two passed at the Geresbeck Supermarket, is without substantial foundation. This check was identified by a witness from the supermarket. The appellant's contention is based on the failure of the FBI handwriting expert specifically to identify this check by number while testifying as to the result of his comparison of

---

1. Appellant challenges the sufficiency of the evidence to show the location of the Daniels Motor Freight Company office, but we think there was ample proof to show it was in Baltimore City. Kenneth J. Lee, the office manager, gave a Baltimore address when he took the witness stand; "Baltimore, Md.," was printed on each check under the name of the company; and, before verdict, when the trial judge inquired as to the location of the office, a police officer, who had previously been sworn and testified, stated that it was in Baltimore City. The recalling of a witness is a matter within the discretion of the trial court. Hensel v. Smith, 152 Md. 380, 136 Atl. 900 (1927).

the signatures on the six Daniels Motor Freight Company checks with samples of appellant's handwriting. The record shows that the six checks (including check no. 17044) were handed to the expert and that he was asked to state the result of his comparison. He replied: "I received these *six checks* which are numbered 17048, 17043, 17049, 17050, and 17041, all on the Daniels Motor Freight Company * * *." Although check no. 17044 was not mentioned by number, the witness described his examination and comparison and concluded, "* * * the writer of the handwriting specimens * * * also wrote the Nathaniel J. Lee signatures on the *six checks*." (Emphasis supplied in both quotations.) The witness referred to the "six checks" a total of four times in his testimony. We hold that there was ample evidence from which the trier of fact could find beyond a reasonable doubt that the appellant forged check no. 17044.

Finally, appellant questions the sufficiency of the evidence to prove that he had conspired with the other three defendants to obtain money from Joseph Snyder, bartender at the Midway Inn, by means of false pretenses, as charged in the criminal information. The testimony shows that appellant and two of the other defendants entered the inn and that appellant attempted to cash a check purporting to be drawn by B & D Contractors, Inc. However, Snyder refused to take the check, having received a warning "flyer" concerning that company's checks. Appellant and his companions left the inn when Snyder threatened to call the police. Thereupon Snyder flagged down a State trooper, to whom he made a complaint, and the trooper gave chase to a red automobile which he had observed parked on the side of the road a few hundred feet from Midway Inn. The car was overtaken and the occupants proved to be the appellant and the other three defendants, one of whom had remained in the car when the others entered the inn. Later the trooper returned to the spot where the automobile had been parked and found nearby a roll of checks and a paper bag containing wallets and identification cards of four other persons. The checks had all been stolen from B & D Contractors, Inc.; the signatures thereon were forged, and the names of payees had been filled in to correspond with the names shown on the fictitious identification cards. Although he made a search at

the time of arrest, the State trooper found no checks, wallets or identification cards on the four defendants or in their car.

Appellant's position is that no conspiracy was proved because the circumstantial evidence upon which the conviction was based was insufficient to show that his companions had guilty knowledge of and consented to participate in his alleged attempt to obtain money from Snyder by means of false pretenses; and that in any event there was no evidence that the check tendered at the Midway Inn was invalid.

In our view, the evidence is legally sufficient to support the appellant's conviction for conspiracy. The trial court acquitted one of the defendants, John E. Bell, who did not enter Midway Inn with the other three, on the ground that no participation on his part had been shown. In finding the others guilty the trial court stated that it found as facts that previous to the episode at Midway Inn the appellant and the other two defendants had jointly participated in passing bad checks at the Sherwood Liquor Store (even though they were acquitted for technical reasons); that they were together in Midway Inn when one of them attempted to cash a B & D Contractors, Inc. check, and that they left when Snyder threatened to call the police; that, when they were apprehended a short time later no checks, valid or otherwise, were found on them or in their automobile, but that a number of bogus B & D company checks and fictitious identification cards were found near the point where the trooper had observed their car parked just after they came from the inn. The court found that these facts justified inferences that the forged checks found beside the road had been discarded by the defendants after they left the inn; that the check tendered to Snyder was one of these; and that the three defendants had acted in concert in attempting to obtain money from Snyder by means of false pretenses.

While it is true that guilt cannot be established by proof that the defendant has committed other crimes, such as, here, the passing of bad checks in the Sherwood Liquor Store, we said in *Purviance v. State*, 185 Md. 189, 196, 44 A. 2d 474 (1945): " * * * it is firmly established that evidence of acts may be admitted to show motive, intent, absence of mistake

or accident, a common scheme, or identity embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other." The fact that the defendants had cashed similar worthless checks at the liquor store was relevant on the issues of guilty knowledge and the existence of a common scheme to pass a series of forged checks to obtain money and goods. *Ward v. State,* 219 Md. 559, 563, 150 A. 2d 257 (1959).

The appellant's contention that the State's failure to reoffer evidence of the prior uttering incident in connection with the criminal information involving the Midway Inn denied him the opportunity to cross-examine the witnesses in connection with the conspiracy case is without merit. Defense counsel (who is not counsel on this appeal) agreed that all the cases should be tried together. The order of proof in a conspiracy case is largely a matter within the sound discretion of the trial court. *Foster v. State,* 230 Md. 256, 186 A. 2d 619 (1962). The record indicates that defense counsel had full opportunity to cross-examine all witnesses, and did not request the resubmission of any evidence. Since this issue was not reserved below, it is not properly before us on appeal. Rule 885.

We think the facts proved in the case and the reasonable inferences therefrom were sufficient to permit the trial court to be convinced beyond a reasonable doubt that the appellant participated in a conspiracy to defraud by attempting to pass the check at Midway Inn. *Levy v. State,* 225 Md. 201, 205, 170 A. 2d 216 (1961).

Having found no error below, we shall affirm.

*Judgments affirmed.*