## CHARLES G. BIEBER *v.* STATE OF MARYLAND

[No. 197, September Term, 1969.]

*Decided January 27, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*William T. Wood* for appellant.

*James F. Truitt, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Linthicum, State's Attorney for Montgomery County,* and *Barry H. Helfand, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The Grand Jurors of the State of Maryland, for the body of Montgomery County, returned a true bill against Charles G. Bieber (appellant), charging that he did forge (1st count) and utter (2nd count) a certain deed of trust. Appellant was tried by a jury in the Circuit Court for Montgomery County who rendered verdicts, as shown in the docket entries,[1] "Guilty on 1st Count of Indictment and Guilty on 2nd Count of Indictment." He was sentenced on the day he was convicted to imprisonment for a total of 20 years. The docket entry reads:

> "SENTENCE—To be committed to the Commissioner of the Department of Correction for confinement for a period of Ten (10) years for the conviction of the 1st Count of Indictment and it is the further sentence that the defendant be committed to the Commissioner of the Department of Correction for confinement for a

---

1. The transcript of the proceedings at trial does not include the verdicts of the jury.

> period of Ten (10) years for the conviction of
> the 2nd Count of Indictment. Sentence of the
> 2nd count to run consecutive with the Sentence
> of the 1st Count of Indictment." [2]

The judgment under the first count, charging forgery, is reversed. The judgment under the second count, charging uttering, is affirmed.

## FORGERY

The judgment under the first count is reversed because there was plain error, material to the rights of appellant, in the court's instructions to the jury with regard to forgery.

The judge, explaining that appellant was charged with the crimes of forgery and uttering, read to the jury the provisions of Code, Art. 27, § 44. Stating that forgery was charged in the first count of the indictment, he said:

> "To convict the defendant of forgery you must—the State must establish the following elements beyond a reasonable doubt and to a moral certainty and those elements are that it must be a forged deed. 1. It must have been forged in Montgomery County; 2. It must have been forged with the intent to defraud is three and the deed four, if genuine might apparently be of legal efficacy or the foundation of legal liability or the foundation of legal obligation.
>
> Now, in relation to that element of jurisdiction that it must have been forged in Montgomery County, I instruct you that the forgery of any instrument is deemed and concluded to have been committed at the place where the false instrument was uttered. So if you should believe beyond a reasonable doubt that the instrument was uttered, actually taken by the defendant with the intent to defraud, and recorded in the

---

2. These were the maximum sentences authorized by Code, Art. 27, § 44.

Circuit Court then you would be justified in convicting the defendant also of the crime of forgery. As to uttering the verb utter is also an adjective and it means to put, to send an instrument such as a check, a promissory note or a deed or deed of trust into circulation to publish or to put forth to offer.

Now, the mere offering of a false instrument with fraudulent intent constitutes the crime of uttering under the section of the Code that I read to you under the statute. It is not necessary that the one who utters the false instrument with fraudulent intent is the forger. In other words, if you believe that the defendant did in fact utter a forged instrument with the fraudulent intent the State need not show that he did in fact himself forge it because proof of uttering would alone support the general verdict of guilty on both counts. That is of the forgery and of the uttering."

At the end of his charge, he said:

"If after consideration of all the evidence weighed in accordance with what you deemed to be the law in relation to burden of proof, your verdict may be simply not guilty, or it may be a general verdict of 'We find the defendant guilty,' which would comprehend guilt of forgery and uttering. *If you find that there was an uttering, again I repeat you may find him guilty of both counts of the indictment.* Your verdict must be unanimous." (Emphasis supplied)

After the charge was concluded, the judge, at the suggestion of the State, in which defense counsel concurred, further instructed the jury:

"Ladies and Gentlemen of the Jury, at the request of counsel I supplement my instructions

for further clarification. Thank you for your suggestion, counsel, and State.

"Your verdict must be unanimous. You may find the defendant not guilty; you may find him not guilty of the first count of the indictment but guilty of the second count of the indictment; or you may find him guilty of the first count and the second count of the indictment."

The jury retired to deliberate its verdict.

Under Code, Art. 27, § 44, "Any person who shall falsely make, forge or counterfeit, or cause or procure to be falsely made, forged or counterfeited, or willingly aid or assist in falsely making, forging, altering or counterfeiting any [instrument designated in § 44], with intention to defraud any person whomsoever" has committed forgery. See *Smith v. State*, 7 Md. App. 457. It is a separate and distinct crime to "utter or publish any false, forged, altered or counterfeited" instrument designated in § 44. We found in *Pearson v. State*, 8 Md. App. 79, that the factors required to constitute the crime of uttering a forged instrument as proscribed by § 44 are: (1) the instrument must be uttered or published as true or genuine; (2) it must be known by the party uttering or publishing it that it was false, altered, forged or counterfeited; and (3) it must be uttered or published with intent to defraud another person. So in proving uttering, forgery is not necessarily proved. In forgery the instrument must be falsely made "with intention to defraud;" in uttering, although the instrument must be falsely made, it need not be *so made with an intention to defraud*—if it was in fact false and published as genuine with knowledge of its falsity, the crime is committed by its *publishing with intent to defraud*. And it is clear that the criminal agent in the forgery is not necessarily the criminal agent in the uttering; one person may forge the instrument and another person may utter it. "To constitute the offense of uttering * * * it is not necessary that the accused be the actual forger." *Levy v. State*, 225 Md.

201, 206. We think it obvious that proof that a person committed uttering is not *per se* proof that he forged the uttered instrument.

However, in *Wesbecker v. State,* 240 Md. 41, the Court of Appeals recognized that there is an inference arising from the possession and uttering of a forged instrument which establishes a *prima facie* case of guilt of forgery by the possessor. It quoted with approval *People v. Murrie,* 168 C.A.2d 770, 336 P. 2d 559, 561 (1959, Ct. of Ap. of Cal. 2nd Dist.) :

> "[T]he possession of an instrument recently forged, by one claiming under it, like the possession of goods recently stolen, is evidence against the possessor."

It also quoted *Green v. State,* 152 Miss. 282, 119 S. 808 (1929) :

> "Possession by the appellant of the forged instrument, with claim of title thereto, is prima facie evidence that he either forged it, or procured it to be forged. And since the jury rejected his claim that he did not pass the check to Barnett, and believed that he did so pass it, his possession thereof was left unexplained and was therefore sufficient to warrant his conviction."

It referred to *Commonwealth v. Aronson,* 312 Mass. 347, 44 N.E.2d 679 (1942) and 1 Wharton's *Criminal Evidence* (12th Ed.), § 137, pp. 259-260. In *Turner v. State,* 6 Md. App. 337 this Court said, at 339, citing *Wharton* and *Wesbecker*: "In the absence of a satisfactory explanation the forgery could be inferred from the possession and uttering of the forged instrument." [3] We think

---

3. The rule as stated in § 137 of *Wharton, supra,* is:
   "The unexplained possession and uttering of a forged instrument, or an attempt to utter it, raises an inference, or a rebuttable presumption, or is strong evidence,

it clear that the rule this State has adopted is that, absent a credible non-culpable explanation,[4] the possession and uttering of a forged instrument by one claiming under it raises an inference which provides evidence sufficient to sustain a conviction that the possessor was the forger. In other words the inference makes out a *prima facie* case which is rebuttable by the showing of circumstances to the contrary.

The rule above discussed is to be distinguished from the presumption, in the absence of evidence to the contrary, that a forgery was committed where the forged instrument was first uttered by the defendant or found in his possession. *Cole v. State*, 232 Md. 111; *Medley v. Warden*, 210 Md. 649. Such presumption goes to jurisdiction or venue, not to guilt.[5] We note the questions whether such presumption should be extended to cover a situation where the defendant-forger was not himself the utterer, or even whether a presumption can be based on the fact that the forged checks were found in a forged state in Maryland were said in *Cole*, at 117, to be open to question and not therein answered.

The rule regarding the inference that the possessor and utterer is the forger is also to be distinguished from

---

or makes out a *prima facie* case, of guilt of forgery in the possessor."

Wharton notes, § 137, 1969 Cumulative Supplement, note 19, p. 46:
"While there is a conflict as to the exact implication to be drawn from the possession of a forged instrument, the substance of the decisions is that such possession will support a conviction in the absence of circumstances to the contrary." (Citing *Bullock v. Com.* 205 Va. 558, 138 S.E.2d 261).

4. Such explanation could be provided by testimony of the possessor or other witnesses found to be credible or by circumstances tending to show the possessor was not the forger.

5. The topic of presumptions is enveloped in controversy and doubt. The authorities are not in accord in a definition or classification of presumptions. At times the word "presumption" is used loosely or carelessly as synonymous with "inference." For discussion of presumptions see Jones, *The Law of Evidence* (1958), vol. 1, §§ 9-11, pp. 16-22; 1 Wharton's *Criminal Evidence*, 12th Ed., § 131, p. 245; McCormick's, *Handbook of the Law of Evidence* (1954), §§ 308-309, pp. 639-641; Williams, *Criminal Law* (1953), §§ 226-227, pp. 700-705; 29 Am. Jur. 2d, § 10. See also *Lindsay v. State*, 8 Md. App. 100.

the doctrine that when a person is charged with forgery and uttering and the evidence is sufficient to prove uttering, it would not invalidate *a general verdict of guilty*, even if the evidence was insufficient to prove forgery or showed that the uttered instrument was forged by someone else. And if the sentence imposed under the general verdict of guilty under an indictment of several counts does not exceed the permissible maximum under the counts proved, the accused cannot successfully complain. *Draper v. State*, 231 Md. 423, 426; *Nelson v. State*, 224 Md. 374, 379-380; *Felkner v. State*, 218 Md. 300, 350; *Medley v. Warden*, 210 Md. 649, 652. This rule is an application of the rationale of the concurrent sentence doctrine. See *Jennings v. State*, 8 Md. App. 312, (1969).[6] It has validity as a matter of judicial convenience; it does not apply to the sufficiency or burden of proof. See *Benton v. State of Maryland*, 89 S. Ct. 2056, 2061. To render a verdict of guilty of forgery, the jury must find from the evidence before them that all the essential elements of forgery were established beyond a reasonable doubt. That the inference properly raised on proof that the de-

---

6. In *Draper*, the jury brought in a general verdict of guilty on charges of forgery, uttering and false pretenses and the sentence was 10 years. In *Nelson*, the defendant was found guilty generally by the court sitting without a jury on seven indictments, each of two counts charging, respectively, forgery and larceny. He was sentenced to three years on each conviction, the sentences to run concurrently. The Court said, 224 Md. at 380: "The judgments appealed from must be affirmed, whether or not appellant was guilty of larceny, since appellant's convictions on the charges of forgery were valid and the three-year concurrent general sentences imposed * * * were well within the statutory maximum for that offense. * * * No useful purpose would be served, therefore, by deciding abstractly the law of larceny on the facts of the case." In *Felkner*, the defendant was found guilty generally on two indictments charging forgery, uttering and false pretenses. He was given 6 months on each conviction. The Court said, 218 Md. at 305: "Since the evidence as to uttering and false pretenses was sufficient to support the general verdict of guilty, its insufficiency to prove forgery (assuming that insufficiency) would not invalidate the verdict." In *Medley*, the petitioner was charged in separate counts with forgery and uttering. The Court said, 210 Md. at 652: "It is a complete answer to petitioner's contention that the proof of uttering, which is not denied, would alone support the general verdicts."

fendant was the possessor and utterer may supply such evidence does not mean that the jury may properly convict him of forgery simply because the evidence was sufficient to convict him of uttering.

The instructions of the lower court with respect to forgery were plainly erroneous in two aspects. First, as to jurisdiction it charged that "the forgery of any instrument is deemed and concluded to have been committed at the place where the false instrument was uttered." This is not the law. There is a rebuttable, not a conclusive, presumption that a forgery was committed where the forged instrument was first uttered by the defendant or found in his possession. The presumption may be rebutted by evidence to the contrary and the jury should have been so told. Whether there was in fact evidence to the contrary was for the jury, not the court, to decide. Second, we are constrained to conclude that the court in its instructions regarding a conviction of forgery on a finding that appellant uttered the instrument was stating the doctrine as to general verdicts. But even if the judge intended that such instructions be considered only with regard to a general verdict, he did not make such intention sufficiently clear.[7] He said at one point in the charge, "In other words, if you believe that the defendant did in fact utter a forged instrument with the fraudulent intent the State need not show that he did in fact himself forge it because proof of uttering would alone support the general verdict of guilty on both counts. That is of forgery and uttering." And he at another time told the jury that they could render a general verdict of, "We find the defendant guilty." But after he had first concluded his charge and then supplemented the instructions "for further clarification" immediately before the jury

---

7. We note that it would not appear to be fundamentally fair, in any event, for a judge to instruct a jury as to a general verdict of guilty in such terms and upon the rendering of a general verdict to impose consecutive sentences for the maximum term authorized on each offense.

retired to deliver their verdict, he said, pointing out that the verdict must be unanimous:

> "You may find the defendant guilty; you may find him not guilty of the first count of the indictment but guilty of the second count of the indictment; or you may find him guilty of the first count and the second count of the indictment."

Not only was a general verdict not then mentioned but also the jury were not told that they could find appellant guilty of the first count and not guilty of the second count. And the jury did not render a general verdict; it found appellant guilty of the first count and guilty of the second count.

Of course, the proper instruction to have been given was a statement of the inference rule adopted in *Wesbecker v. State, supra,* above discussed. This rule is a far cry from an instruction that if the jury found beyond a reasonable doubt "that the instrument was uttered, actually taken by the defendant with intent to defraud, and recorded in the Circuit Court then you would be justified in convicting the defendant also of the crime of forgery." Or from the further instruction, "If you find that there was an uttering, again I repeat you may find him guilty of both counts of the indictment." These instructions were not correct and in the light of them the failure to give the jury the proper rule was plain error. It may well have been that the evidence before the jury was sufficient for them to find appellant guilty of each of forgery and uttering, but it could not properly convict him of forgery merely because they were convinced beyond a reasonable doubt that he uttered the forged instrument.

We think that the errors in the instructions with respect to forgery, both as to jurisdiction and guilt, were not only plain but material to the rights of appellant. The evidence adduced in the instant case as to each of the

offenses of forgery and uttering was, in the main, circumstantial, both as to the *corpus delicti* and the criminal agency of appellant. The connection of appellant with the challenged deed was not shown by direct evidence. It was not directly established that he forged it, caused or procured it to be forged, or willingly aided or assisted in its forgery, or that he uttered it. Of course, both the *corpus delicti* and criminal agency may be shown by circumstantial evidence. *Nichols v. State*, 5 Md. App. 340, 350-351. The judge adequately instructed the jury with regard to the meaning and effect of circumstantial evidence, but the unique factual posture of this case and the unusual circumstances surrounding the alleged forgery and uttering as shown by the evidence bring into sharper focus the errors in the instructions as affecting rights material to appellant. We believe that by the instructions the jury was permitted to reach a verdict of guilty of forgery on *a mere finding that appellant was guilty of uttering* with no regard to an inference that may have supplied the evidence necessary *if* the jury determined that there was no satisfactory explanation of his possession and uttering of the forged instrument. Instructions so permitting were plain error material to appellant's rights and we take cognizance of them on our own motion as permitted by Rule 756 g, even though appellant may not assign the error as of right because he failed to challenge below. The vagaries of jury verdicts are such that we decline to speculate that the verdict of the jury here, as to forgery, was necessarily reached with a full understanding of the proper rule of law. We therefore reverse the judgment under the first count charging forgery.

## UTTERING

As we have set aside the conviction of forgery we shall consider the questions presented by appellant only as they are apposite to the conviction of uttering.

We first note that there was error also in the instructions with respect to uttering. The court did not instruct

the jury that it is an essential element of that crime that the person uttering the forged instrument must have knowledge [8] that it was forged [9] or altered. *Pearson v. State, supra.* The judge said: "Now the mere offering of a false instrument with fraudulent intent constitutes the crime of uttering * * *." An instrument may be passed with intent to defraud without knowledge of its falsity but this would not be an unlawful uttering. But there was no request made to the court to supply the omission and no objection below to the instruction given. Md. Rule 756 f. On appeal appellant does not suggest that we take cognizance of the error. Appellant presented no defense predicated on a claim that he did not know the instrument uttered was false. In view of these circumstances and in light of the entire charge with regard to uttering, and particularly the instruction as to fraudulent intent, we do not feel that the error was material to the rights of appellant and do not take cognizance of it on our own motion. Md. Rule 756 g. The situation before us it not factually comparable to that in *Pearson* where in reversing the judgment we were careful to point out that the defense was that the defendant attempted to cash the forged check as a favor for a friend, not knowing that it was forged, that he did not offer to endorse it, that he repeatedly requested the court to instruct the jury *specifically* and *particularly* that guilty knowledge was a prerequisite to conviction and that the court refused to do so. 8 Md. App. at 90.

## The Sufficiency of the Evidence

The original deed described in the indictment was admitted in evidence. It consisted of the completion of a printed form of Lerner Law Book Co., Blank No. 1002-

---

8. That an accused has guilty knowledge may be shown by direct evidence or it may be inferred from the facts and circumstances of the particular transaction. *Pearson v. State, supra,* at 87-88.

9. We found in *Smith v. State, supra,* at 462, that the terms "falsely make, forge or counterfeit" as used in Code, Art. 27, § 44, are virtually synonymous and were collectively intended to proscribe the crime of forgery.

A and designated as "Maryland Deed of Trust." The "Whereas" clauses declared that Sally Peters was justly indebted to appellant in the full sum of $80,000 with interest at 6 per cent per annum, for which amount Sally Peters had executed and delivered to appellant a promissory note of even date payable to appellant, the principal and interest payable at $565 per month until paid, with "any remaining balance due August 16, 1994." It stated that the "said note has been identified by the Notary Public taking the acknowledgment to these presents." By the granting clause certain property described was conveyed to Roy Dodge and Merrill Lynch, Trustees,[10] and there followed the conditions of the trusts as are customary in such deeds. There were covenants by Sally Peters of special warranty and future assurances. A signature under seal reading "Sally Peters" was written above the typed name "Sally Peters." A signature reading "William Hancock" appeared in three places on the deed—as being signed, sealed and delivered in his presence; as certifying that Sally Peters personally appeared before him in his capacity of a Notary Public and acknowledged that she executed the deed for the purposes therein contained; and as certifying that appellant personally appeared before him in his capacity as a Notary Public and made oath in due form of law that appellant was the party secured by the deed (the Beneficiary), that the consideration recited in the deed was true and bona fide as therein set forth, and that appellant affirmed that he was the agent for the party secured and had authority to make the affidavit. The Notary Seal impressed opposite each of the acknowledgment and affidavit read "William Hancock, Notary Public, Montgomery County, Md.," but whether or not it included a middle initial of William Hancock cannot be ascertained from the impression. There was a statement that William Hancock's commission expires on the 1st day of July 1969. The deed con-

---

10. There was no "Being clause" setting out a reference to a deed by which Sally Peters obtained title to the property conveyed.

tained the following: "This certifies that this instrument was prepared by the party secured thereby, Charles G. Bieber," followed by a signature apparently reading "Charles G. Bieber" above the typed name "Charles G. Bieber." The deed was dated 16 April 1968 and the acknowledgment and affidavit bore the same date. The face of the deed, over the signature of Howard M. Smith, Clerk, showed that it was received for record on the 29th day of April 1968 at 11:52 o'clock A.M. and recorded in Liber No. 3732 at Folio 239, one of the Land Records for Montgomery County. Typed on the face of the deed was "Mail to: Jones and O'Brien, 7720 Wisconsin Avenue, Bethesda, Maryland 20014, Case No. 9918." A cash register stamp on the deed showed that two sums had been paid to the Clerk of the Court on 29 April 1968, $176 and $9.50.

Roy Dodge was Sally W. Peter's business manager. It was established by the testimony of a psychiatrist that Sally W. Peters was unable to appear as a witness. "[S]he is disoriented, really doesn't know what she is doing most of the time or knows very little of what she is doing. She hallucinates. She hears voices and she is quite depressed. She would not be able to get her own meals if someone doesn't get them for her." She had been placed in the Washington Sanitarium 1 February 1968 and was discharged from there to the Colonial Nursing Home on 1 April 1968. "She was very sick, very delusional, received electro shock treatments. She was also quite physically sick. * * * She has been continuously unable to understand accurately any procedure, even the need for herself to have adequate food, since I saw her on 29 May 1967. * * * If she had signed her name [in April 1968] she wouldn't have known what she was doing."

Pauline Clark, Deputy Clerk of the Circuit Court for Montgomery County, testifying in behalf of the State, explained the procedure followed in the recording of deeds among the Land Records of Montgomery County. When a deed of trust is brought into the Clerk's Office

and offered for record and the recording fees paid it is indexed, microfilmed or photostated and put in a liber. The original is mailed back to wherever the clerk is told to mail it at the time it is presented for record by the person who presents it for recordation. At the time the deed here was presented for recordation the recordation fee and stamp tax was paid by a check in the amount of $185.50. The check contained the signature "Charles G. Bieber" as the maker, drawn on an account, as indicated by printing on the check, in the names of James Salter, an attorney at law, and Bieber. The check was returned by the bank "for insufficient funds." Mrs. Clark telephoned Salter "to get the telephone number of Mr. Bieber." She then wrote Bieber a letter informing him that his check had been returned marked insufficient funds and requesting that he "send a Money Order immediately to cover same." The next morning "a young man brought me $185.50 * * * I gave him the check and he gave me $185.50" in cash. She could not identify this man but he told her he was not Mr. Bieber. She did not know who offered the deed for recording. She identified a certified copy of the oath subscribed to by a William M. Hancock when he obtained his commission as a Notary Public of the State of Maryland in and for Montgomery County on 5 July 1967 as contained in the Test Book kept by the Clerk of the Circuit Court for Montgomery County. It was admitted in evidence. She testified that she had checked the official records pertaining to Notaries Public kept by the Clerk of the Court and that there was only one William M. Hancock commissioned as a Notary Public in and for Montgomery County.

William M. Hancock testified that he was a Notary Public for Montgomery County and that he was a real estate broker for County-Wide Realty. He knew appellant who had been employed by County-Wide Realty for a period of time. He said he had not signed the deed of trust nor had he placed his Notarial Seal thereon, nor had he ever given anyone permission to sign his name or affix his Seal thereon. He had talked to appellant con-

cerning the signature "William Hancock" on the deed the "last part of May or the first part of June." He told appellant he had been "queried by a Mr. Canada if I had notarized a document for Mrs. Peters." Hancock asked appellant "if that was me" and appellant said, "No, that it had nothing to do with me * * * that it was another notary named Hancock located some place else in the County."

The police obtained from the witness William M. Hancock specimens of his signature. They were compared with the Hancock signatures on the deed by a special agent of the F.B.I., qualified as an expert in "handwriting, handprinting, mechanical impressions, paper examinations, pens, inks and so forth." It was the opinion of the expert witness that the Hancock signatures on the deed were not written by the same person who wrote the other signatures. Impressions of the Notarial Seal in the possession of the witness William M. Hancock were compared by the expert with the Notarial Seal impressions on the deed. He noted that the seal impressions on the deed were lightly made and not deeply embossed into the document. For that reason he was unable to reach a definite opinion but he did notice that the seal in possession of the witness Hancock printed lighter in the lower left portion of the seal—"it prints lighter than in the rest of the seal." The impression on the deed was made in a similar manner "which would tend to indicate the possibility that the questioned seal impression could have been made by the seal" in the possession of Hancock. Sixteen checks were also submitted to the expert for examination. These checks bore the signature "Sally W. Peters" as the maker and were issued during the period 2 September 1964 to 10 May 1968. Four were drawn on an account in the name of "Canada's Tavern, Inc." of which Sally W. Peters was the President, four were drawn on an account in the name of "Claire Flower Shop" of which Sally W. Peters was the proprietor, four were drawn on an account in the name of "Barney Circle Restaurant" of which Sally W. Peters was the proprietor, and three were drawn on

the personal account of Sally W. Peters. They were apparently issued in payment of various business obligations and debts and all had been paid by the bank on which they were drawn. They had been given to the police by G. Vann Canada, Jr., the nephew of Sally W. Peters, who had obtained them from Roy Dodge, his aunt's business manager. Mr. Canada, a member of the Maryland Bar, had happened to see the deed in question in June 1968 recorded in the Land Records of Montgomery County. Knowing his aunt's health had not been good, he made inquiries about the deed, and as a result of those inquiries referred the matter to the office of the State's Attorney. Mr. Canada believed that the signatures on the checks were those of his aunt, Sally W. Peters. He was familiar with her signature. "I am not a handwriting expert, but to the extent that I am familiar with her writing I do believe that is hers." It was the opinion of the expert witness that the signature "Sally Peters" on the deed was not written by the same person who wrote "Sally W. Peters" on the checks. During the investigation of the case the police had appellant write the name "William Hancock" eight times, the name "Sally Peters" ten times, the name "Charles G. Bieber" six times, each on a separate slip of paper. These were also submitted to the F.B.I. and a comparison made with the signatures on the deed. The results of the comparison did not come into evidence. The writings obtained from appellant were marked for identification at the trial but were not offered in evidence. When proffered they were withdrawn upon objection and the State did not pursue the matter.

James W. Salter, an attorney with the firm Jones and O'Brien in Bethesda, Maryland, testified that the deed was mailed to him by the Clerk of the Circuit Court for Montgomery County after it had been recorded. He placed it in appellant's file because "he asked me to. * * * He asked me to keep it for him." Salter acted only "as a depositor for the document. * * * I was asked nothing. I gave no advice. I had nothing to do with the docu-

ment." Neither he nor his office had any settlement proceedings in relation to the deed and he had never heard of Sally Peters, Roy Dodge or Merrill Lynch. He had not issued a check in the amount of $185.50 for the recording of the deed. Upon the presentation of a search and seizure warrant by the police, Salter gave them the deed. He thought the deed admitted in evidence was the one he gave the police — "I gave [the police] the only one that I had," with Charles Bieber's name on it. No evidence was offered by appellant.

As the case here was tried before a jury, the question of the sufficiency of the evidence comes to us on the denial of a motion for judgment of acquittal made at the close of all the evidence. Our function is to determine whether the court erred in submitting the case to the jury. We are governed in this determination by ascertaining whether or not there was direct evidence or rational inferences therefrom sufficient to establish the facts to be proved so that the jury could fairly be convinced beyond a reasonable doubt of the appellant's guilt of the crime charged. The credibility of the witnesses and the weight of the evidence are matters for the trier of fact. *Williams v. State,* 5 Md. App. 450.

There was no direct evidence that appellant forged or uttered the deed. But his criminal agency as well as the *corpus delicti* may be proved by circumstantial evidence. We discussed circumstantial evidence in *Nichols v. State,* 5 Md. App. 340. We said, at 350-351:

> "The law makes no distinction between direct evidence of a fact and evidence of circumstances from which the existence of a fact may be inferred. No greater degree of certainty is required when the evidence is circumstantial than when it is direct, for in either case the trier of fact must be convinced beyond a reasonable doubt of the guilt of the accused. * * * '[C]ircumstantial evidence need not be such that no possible theory other than guilt can stand * * *

> It is not necessary that the circumstantial evidence exclude every possibility of the defendant's innocence, or produce an absolute certainty in the minds of the jurors. The rule does not require the jury to be satisfied beyond a reasonable doubt of each link in the chain of circumstances relied upon to establish the defendant's guilt.' * * * While it must afford the basis for an inference of guilt beyond a reasonable doubt, it is not necessary that each circumstance, standing alone, be sufficient to establish guilt, but the circumstances are to be considered collectively."

We have no difficulty in determining that the evidence was sufficient to establish the criminal agency of appellant. The recording costs were paid by a check made by him. When the check was not paid due to insufficient funds, the court clerk wrote appellant and the money for the recording was forthcoming the next day. When the recorded deed was received by the attorney from the clerk's office, he placed it in appellant's file at the direction of the appellant. It was a rational inference that the deed was recorded at the instance of appellant; the recording was an uttering of it.

The facts to be proved to establish the *corpus delicti* of uttering are: (1) the instrument must be uttered or published as true or genuine; (2) it must be known by the party uttering or publishing it that it was false, altered, forged or counterfeited; and (3) it must be uttered or published with intent to defraud another person. *Pearson v. State, supra.*

The presentation of the deed for recording among the county land records was sufficient to show an uttering of it as true or genuine. That appellant told Hancock, the Notary Public purportedly witnessing and taking the acknowledgment to the deed, that it was not Hancock who did so but another Notary named Hancock located somewhere else in the county, in the light of the evidence that

there was no other Notary by that name commissioned in the county, and that the Notarial Seal on the deed could have been made by Hancock's seal in the light of the evidence tending to show that appellant had access to that seal, were sufficient for the case to be submitted to the jury for their factual determination whether appellant had knowledge of the falsity of the deed. And that the deed was uttered with an intent to defraud could be rationally inferred from the fact that a false deed was presented for recording and recorded among the land records of the county, thus giving it added legal significance.

On the totality of the evidence before the court and with emphasis on the above evidence, we hold there was no error in the denial of the motion for judgment of acquittal on the charge of uttering.

### The Receipt of the Testimony of a Challenged Witness

Appellant filed a pre-trial motion for discovery which included a request for the names and addresses of the witnesses the State intended to call to prove its case in chief. Md. Rule 728 a 3. In its answer the State listed Howard M. Smith, Clerk of the Circuit Court for Montgomery County. It did not list the name of Pauline Clark, the Deputy Clerk of that court, but called her to testify. Appellant objected on the ground her name did not appear in the answer. He did not claim surprise nor did he ask for a continuance to enable him to prepare a defense against her testimony. The record does not disclose any evidence offered or proffered by appellant with regard to prejudice to him. Rule 728 provides no sanction for the failure to include a name in the list of witnesses furnished by the State nor is there a statute providing one. We find no error in the court allowing the challenged witness to testify. See *Jones v. State,* 5 Md. App. 180, 186-189.

### The Instrument Uttered

Md. Code, Art. 27, § 44 includes among the instruments which are the subject of forgery and uttering "any

deed" and "writing obligatory." The indictment alleged that appellant had forged and uttered "a certain writing obligatory, to wit a Deed of Trust," describing it with some particularity. Appellant claims that a deed of trust is not a writing obligatory absent proof of the existence of the note, the payment of which the deed of trust secured, and absent proof of ownership of the property conveyed. He contends the court erred in instructing the jury over objection that the words "writing obligatory" in the indictment were superfluous on the ground that a deed of trust is within the meaning of "deed" as used in the statute. The instruction challenged was:

> "I instruct you in these advisory instructions that the writing obligatory is superfluous because the statute comprehends as a subject matter a forgery of a deed. I tell you that a deed of trust within contemplation of the law as defined in that statute is a deed. A deed is an instrument that conveys property. A deed of trust conveys property. It is essentially a security."

If a deed of trust is encompassed within the meaning of "deed" as used in the statute, whether or not it is also a writing obligatory would be immaterial and its designation as a writing obligatory in the indictment would be surplusage. We find that a deed of trust is a deed within the contemplation of the statute.

The word deed in § 44 is not defined or qualified. At common law a deed was a sealed instrument, containing a contract or covenant, delivered by the party to be bound thereby, and accepted by the party to whom the contract or covenant runs.[11] We see nothing in the statute to lead us to believe that the word "deed" therein does not have this common law meaning. A deed of trust is a sealed instrument, it contains a contract or covenant,

---

11. Blackstone in his Commentaries on the Law (Gavit) ch. xx, p. 394 defines it simply as "a writing, sealed and delivered by the parties."

it is delivered by the party to be bound thereby, and accepted by the party to whom the contract or covenant runs. Therefore it is a deed and within the ambit of the statute.

Even if "deed" is defined in its more restricted sense as "a written instrument, signed, sealed, and delivered by which one person conveys land, tenements, or hereditaments to another,[12] a deed of trust conveying property as security for a debt falls precisely within the definition. It is not necessary that the conveyance of the property be absolute. So such an instrument conveying an estate on a condition subsequent so as to leave a right of reentry in the grantor or his heirs, or conveying an estate on a condition precedent, not to be effective until the conditions are fulfilled, or conveying an estate on special limitations (or on a base or qualified fee), leaving a possibility of reverter in the grantor, is nonetheless a deed. Thus in Maryland a mortgage is a deed, for in this State, as distinguished from lien theory states, we take the common law view of a mortgage, as transferring title of the property to the mortgagee. *Eder v. Rothamel*, 202 Md. 189, 195. That it is a conveyance upon conditions, so as to make its grant defeasible, does not take it out of the meaning of "deed". And we note that Md. Code, Art. 21, § 29 provides: "*Deeds* of mortgage conveying any use, estate, or interest in land shall be executed, acknowledged and recorded as absolute deeds of the same." (emphasis supplied). Therefore, even if a deed of trust be considered in purpose and effect a mortgage, see *Baker v. Dawson*, 216 Md. 478, 486, *Northrop v. Beale*, 170 Md. 439, 441, *Manor Coal Co. v. Beckman*, 151 Md. 102, 115-116, it is nevertheless a deed.

We hold that there was no error in the charge to the jury that the deed of trust here was within the contemplation of "deed" as used in the statute and that the

---

12. Black's Law Dictionary, 4th Ed., p. 502. In Maryland deeds conveying real estate must be signed and sealed by the grantor or bargainor, attested by at least one witness, acknowledged and recorded. See Md. Code, Art. 21, §§ 1 and 6.

words "writing obligatory" in the indictment were surplusage.[13]

*Confidential Relationship between Attorney and Client*

At the trial appellant claimed privilege as to the conversation between him and the attorney Salter regarding the deed. The court heard evidence on the matter and determined that a confidential relationship did not exist so as to invoke the privilege. It is firmly established in this State that confidential communication between attorney and client are privileged, but only under certain conditions. The Court of Appeals said in *Lanasa v. State,* 109 Md. 602, 617:

> "The subject of confidential communications between attorney and client has been fully treated by this Court. The result of the authorities is that to make the communications privileged they must be made during the existence of the actual relation of attorney and client, or during interviews and negotiations looking to the establishment of such a relationship between the parties, and must relate to professional advice and to the subject-matter about which such advice is sought. When such conditions exist the law will not permit the counsel to divulge the communications without the consent of the client."

See *Balto. Transit Co. v. Mezzanotti,* 227 Md. 8; *Morris v. State,* 4 Md. App. 252. After testifying that he had received the deed of trust by mail from the Circuit Court after it had been recorded, Salter was asked why he put it in the file belonging to appellant. There was objection to his reply, "He asked me to keep it for him," on the

---

13. Of course, there is no question of variance. A deed of trust was charged and proved. A variance as to "writing obligatory" would in any event be immaterial since that allegation was surplusage. 41 Am. Jur. 2d, *Indictments and Informations,* § 262. See *Love and Matthews v. State,* 6 Md. App. 639, 642-643.

ground of privilege. Evidence on the issue showed that Salter had represented appellant in several matters. He first represented appellant in March 1968 and represented him in May 1968. His representation was with respect to four different matters and papers concerning them were kept in a file in appellant's name. It was this file in which the deed of trust was placed at the direction of appellant made during a course of a telephone conversation with regard "to other cases that I represented him on." But Salter made clear that as far as the deed of trust was concerned he acted only as a depositary of the document. He had no idea at all "what it was for," he gave no advice for or about it and was asked nothing for or about it by appellant who only requested that he keep it for him. Salter said, "I was asked nothing. I gave no advice. I had nothing to do with the document." The court asked Salter if he or his office had "any settlement proceedings, so-called, in relation to a deed of trust of the 16th of April, 1968, from Sally Peters to Roy Dodge and Merrill Lynch securing certain properties in the subdivision known as National Chatauqua of Glen Echo." Salter replied, "My office did not have any settlement and I have never of the three people that you named." (sic).

Since the question of the existence of an attorney-client relationship arose in connection with the admissibility of evidence, it was proper for the court, as a matter of law, to make the determination. *Huester v. Clements*, 252 Md. 641, 646. It is patent that the challenged communication here did not relate to professional advice or to any subject matter about which such advice was sought. We feel, in the light of the evidence, that an attorney-client relationship did not exist between Salter and appellant with respect to the deed of trust. We note that there is authority that the privilege does not arise when the attorney acts merely as a depositary, as for example, of certain money. 3 *Wharton's Criminal Evidence*, (12th Ed.) § 801, p. 147. We feel that the lower court could properly conclude that the communication here did not fall within the rule as stated 8 *Wigmore*,

*Evidence* (1961), § 2292, quoted by us with approval in *Morris v. State, supra,* at 254:

> "(1) Where legal advice of kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived."

We agree with the ruling of the lower court and hold that there was no error in admitting the challenged testimony.

### The Sentences

In view of our reversal of the judgment as to forgery, the contention that the imposition of consecutive sentences was improper is moot on this appeal. We note, however, that the "rule of lenity" urged by appellant is not recognized in this jurisdiction even if it would be otherwise applicable. We further note that there is here no question of the offenses of forgery and uttering merging. Upon valid convictions of forgery and uttering any sentence on each conviction within the limit prescribed by law would be valid and would not constitute cruel and unusual punishment in violation of constitutional protections. They would be reviewed on appeal only if dictated, not by a sense of public duty, but by passion, prejudice, ill will or other unworthy motive. *Thomas v. State,* 8 Md. App. 5; *Charles v. State,* 1 Md. App. 222. That sentences are imposed to run consecutively does not render the punishment cruel and unusual. *Long v. State,* 7 Md. App. 256; *Fisher v. State,* 1 Md. App. 505.

### Other Contentions

Appellant's brief presents six other questions stated to be included pursuant to appellant's written instructions to counsel. Each is without specificity, being a bald al-

legation couched in general terms. Some are factually incorrect. Others are not properly before us, not being matters reviewable on direct appeal. We find them all to be without merit as raised and do not further consider them.

*As to No. 9654 Criminals:*

*Judgment under the first count of the indictment (forgery) reversed; case remanded for a new trial;*

*Judgment under the second count of the indictment (uttering) affirmed.*