Jarvis JAMES, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 84SC399.

Supreme Court of Colorado,
En Banc.

Nov. 3, 1986.

Rehearings Denied Dec. 2, 1986.

David F. Vela, Colorado State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Milton Hutchins, First Asst. Atty. Gen., Denver, for respondent.

Justice LOHR delivered the Opinion of the Court.

We granted certiorari to review the decision of the Colorado Court of Appeals in *People v. James*, 694 P.2d 356 (Colo.App. 1984), which affirmed the conviction of Jarvis James for first degree sexual assault. The trial court instructed the jury that first degree sexual assault can be committed by causing submission of the victim in any one of three specified ways. On appeal, the defendant contended that the general verdict of the jury could not be sustained because there was no evidence to support one of these three alternative means of causing submission. The court of appeals found this contention both legally and factually wanting. That court also rejected the defendant's arguments that the trial court had erred in denying his motion for disqualification of the trial judge and in receiving testimony from two physicians concerning the victim's emotional and physical condition several days after the events upon which the prosecution was based. We granted certiorari to review these three holdings and now affirm the judgment of the court of appeals.

## I.

The defendant was charged in Fremont County District Court with sexually assaulting a female victim in her apartment on July 7, 1981, in Canon City.[1] The following description of the events in question is based upon the evidence presented by the People at the defendant's jury trial.

The complaining witness testified that James came to her apartment shortly after midnight asking to borrow a cup of sugar. Once inside the apartment, James grabbed the woman, forced her into a bathroom closet and tore off her underpants. During these activities, the woman screamed,

1. The defendant was charged by amended information with one count of first degree sexual assault, § 18-3-402, 8B C.R.S. (1986), and one count of second degree sexual assault, § 18-3-403, 8B C.R.S. (1986), based on the events described in the text. The trial court instructed the jury that it could find the defendant guilty of either first degree sexual assault or second degree sexual assault but could not find him guilty of both. The jury returned general verdicts of guilty of first degree sexual assault and not guilty of second degree sexual assault.

whereupon James grasped her throat and chin, pushed her face into the wall and told her that he would have good reason to kill her if she continued to scream. The defendant had begun to subject the woman to sexual intercourse when her twenty-month-old son began to cry. The woman managed to free herself and went into her son's bedroom to comfort him. The defendant followed her into the bedroom and allowed her to attempt to put her son back to sleep. While the woman was attending to her child, James told her in some detail that he had made arrangements with others to kill her and her son if the woman reported the incident. The defendant then forced her to return to the living room and again required her to submit to sexual intercourse. The woman further testified that during the second sexual act, her son emerged from his bedroom, ran to his mother, put his arms around her neck and began to cry, "Mommy, mommy." The sexual assault was completed in the presence of the child. The defense counsel offered no evidence but argued that although James and the woman did have sexual intercourse, the acts were done with the woman's consent and that she was fabricating a story to conceal her willing sexual involvement with James.

The jury found the defendant guilty of first degree sexual assault. Thereafter, the trial court denied the defendant's motion for a new trial and sentenced him to six years imprisonment. James appealed. The court of appeals affirmed and we granted certiorari.

II.

The defendant argues that the evidence presented at trial was insufficient to justify a finding by the jury that every element of each alternative method of committing the charged offense had been proven beyond a reasonable doubt. Specifically, the defendant asserts that the evidence is wanting on the third alternative method of causing submission of the victim, threat of future retaliation. As a consequence, James contends, he has been denied a due process

right to assurance that his conviction was based upon the constitutionally required quantum of evidence.

The defendant first raised this issue at trial by objecting to the instruction that set out the elements of sexual assault in the first degree and that specified the three alternative methods of causing the victim to submit. He specifically based his opposition to this instruction on the contention that the evidence did not support the third alternative, causing submission by threat of future retaliation. The court overruled the objection and gave the instruction, which provided in most pertinent part:

The elements of Sexual Assault in the First Degree are ...:

1. A person
2. Knowingly inflicts sexual penetration on another, not his spouse, and
3. Causes submission of the victim through the actual application of physical force or violence; or

causes submission of the victim by threat of imminent death, and the victim believes that he has the present ability to execute these threats; or causes submission of the victim by threatening to retaliate in the future against the victim, or any other person, and the victim reasonably believes he will execute this threat.

This instruction accurately detailed the elements of the crime of first degree sexual assault as it was charged in this case. *See* § 18-3-402, 8B C.R.S. (1986). The only issue concerning the propriety of its use is whether the evidence was legally and factually sufficient to support a general verdict based on this instruction.

A.

In order to sustain a criminal conviction, due process of law guaranteed by the fourteenth amendment to the Constitution of the United States requires that sufficient evidence be presented to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense. *Jackson v. Virginia,* 443 U.S. 307, 316, 99

S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979); *In re Winship,* 397 U.S. 358, 361–64, 90 S.Ct. 1068, 1070–72, 25 L.Ed.2d 368 (1970). Even before *Winship,* our court recognized the "proof beyond a reasonable doubt" standard as an integral part of the due process clause of the Colorado Constitution. *People ex rel. Juhan v. District Court,* 165 Colo. 253, 257, 439 P.2d 741, 744 (1968). *Accord People v. Gonzales,* 666 P.2d 123, 127 (Colo.1983); *Hendershott v. People,* 653 P.2d 385, 390 (Colo.1982), *cert. denied, Colorado v. Hendershott,* 459 U.S. 1225, 103 S.Ct. 1232, 75 L.Ed.2d 466 (1983).

■ The instruction defining the elements of first degree sexual assault allowed the jury to convict the defendant if he had knowingly inflicted sexual penetration upon the victim by causing her to submit to him in one of three ways: (1) application of physical force or violence, (2) threat of imminent death, or (3) threat of future retaliation. There was substantial testimony by the victim that the defendant used both actual physical force and threat of imminent death to cause her submission. She testified that he repeatedly shoved her around, forcefully disrobed her, and threatened to kill her if she continued to scream. The jury could have arrived at the guilty verdict fully consistent with the constitutional requirement of proof beyond a reasonable doubt with respect to either of the first two alternative methods of causing submission. The defendant does not argue to the contrary. However, the jury's verdict was returned on a general verdict form that did not specify upon which of the alternatives the verdict was reached.

The defendant argues that because we are unable to determine upon which of the three theories the jury based its verdict, the evidence must be sufficient to support a guilty verdict under each of them. The United States Supreme Court stated in

*Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), "[i]t has long been settled that when a case is submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside." *Id.* at 526, 99 S.Ct. at 2460 (quoting *Leary v. United States,* 395 U.S. 6, 31–32, 89 S.Ct. 1532, 1545–46, 23 L.Ed.2d 57 (1969)). *Accord People v. Lee,* 630 P.2d 583, 587–88 (Colo.1981). The constitutional infirmity alleged by the defendant in the present case is a lack of sufficient evidence to enable the jury to find beyond a reasonable doubt that the defendant caused submission of the victim by threat of future retaliation.

■ We agree that unless the evidence on each of the alternative methods of causing the victim's submission is sufficient to support a verdict by proof beyond a reasonable doubt, there can be no assurance that the general verdict is based upon that constitutional standard mandated by the due process clauses of both the federal and state constitutions. As we stated in *People v. Lowe,* 660 P.2d 1261 (Colo.1983), "[i]f the jury is asked only for a general verdict [when the prosecution is based on alternative methods of committing a crime], then on appeal there is no way to decide upon which theory the jury reached its verdict. In such a case an error relating to either count would void the entire verdict." *Id.* at 1271. *Accord People v. Lee,* 630 P.2d at 587–88.[2]

Many other courts that have considered this issue directly have reached the same conclusion. *E.G., Bachellar v. Maryland,* 397 U.S. 564, 570–71, 90 S.Ct. 1312, 1315–16, 25 L.Ed.2d 570 (1970); *Street v. New York,* 394 U.S. 576, 585–88, 89 S.Ct. 1354, 1362–63, 22 L.Ed. 572 (1969); *Sunkist Growers, Inc. v. Winckler & Smith Citrus*

---

**2.** The court of appeals considered *People v. Lee* and *People v. Lowe* to be inapposite because each is based on a *constitutional* infirmity in one alternative theory submitted to a jury as a basis for a general verdict. As explained in the text, however, the present case also involves an alleged constitutional infirmity, lack of suffi-

cient evidence to support a verdict beyond a reasonable doubt. This makes it unnecessary to address whether *People v. Lee* and *People v. Lowe* require reversal only when there is a *constitutional* defect in one of the alternative theories and the jury returns a general verdict.

*Products Co.,* 370 U.S. 19, 30, 82 S.Ct. 1130, 1136, 8 L.Ed.2d 305 (1962); *Yates v. United States,* 354 U.S. 298, 312, 77 S.Ct. 1064, 1073, 1 L.Ed.2d 1356 (1957); *Stromberg v. California,* 283 U.S. 359, 367–68, 51 S.Ct. 532, 535, 75 L.Ed. 1117 (1931); *Cappellini v. McCabe Powers Body Co.,* 713 F.2d 1, 8 (2d Cir.1983); *United States v. Head,* 641 F.2d 174, 179 (4th Cir.1981); *United States v. Carman,* 577 F.2d 556, 566 (9th Cir.1978); *United States v. Moynagh,* 566 F.2d 799, 804 (1st Cir.1977); *United States v. Tarnopol,* 561 F.2d 466, 475 (3d Cir.1977) (insufficiency of evidence on one count); *United States v. Natelli,* 527 F.2d 311, 325 (2d Cir.1975) (insufficiency of evidence on one count); *Van Liew v. United States,* 321 F.2d 664, 672 (5th Cir. 1963); *Boulder v. Commonwealth,* 610 S.W.2d 615, 617 (Ky.1980) (insufficiency of evidence on one count); *State v. Olsson,* 56 Mich.App. 500, 224 N.W.2d 691, 694 (1974) (insufficiency of evidence on one count); *State v. Batson,* 339 Mo. 298, 96 S.W.2d 384, 390–91 (1936); *State v. Green,* 94 Wash.2d 216, 616 P.2d 628, 637–38 (1980) (insufficiency of evidence on one count); *Fife v. State,* 676 P.2d 565, 568–69 (Wyo. 1984) (insufficiency of evidence on one count). This same view is implied by courts that have ruled that while jurors must be unanimous as to a verdict of guilty they need not agree on a single alternative method of commission of a crime as long as each alternative is supported by sufficient

proof to sustain a conviction. *E.g., State v. Dixon,* 127 Ariz. 554, 622 P.2d 501, 508 (1980); *State v. Duncan,* 312 N.W.2d 519, 523 (Iowa 1981); *State v. Wilson,* 220 Kan. 341, 552 P.2d 931, 936 (1976); *State v. Souhrada,* 122 Mont. 377, 204 P.2d 792, 796 (1949); *People v. Sullivan,* 173 N.Y. 122, 65 N.E. 989, 990 (1903). *See People v. Nicholas,* 112 Cal.App.3d 249, 169 Cal.Rptr. 497, 510–11 (1980); *State v. Hazelett,* 8 Or.App. 44, 492 P.2d 501, 503 (1972).[3]

The cases relied on by the People to support their position that it is not necessary that each alternative method of causing the victim's submission be based upon evidence sufficient to support a jury verdict by proof beyond a reasonable doubt are not at odds with our holding in the present case. *See People v. Marquez,* 692 P.2d 1089, 1099–1100 (Colo.1984); *People v. Ledman,* 622 P.2d 534, 539 (Colo.1981); *People v. Taggart,* 621 P.2d 1375, 1387 (Colo.1981); *Hernandez v. People,* 156 Colo. 23, 29, 396 P.2d 952, 955 (1964). These cases establish the general principle that a defendant is not deprived of his right to a unanimous verdict in circumstances where the court instructs the jury that the crime can be committed in alternative ways and the jury returns a general verdict of guilty. They do not address the question now before us—whether each alternative must be supported by proof sufficient to permit a jury to find the defendant guilty beyond a rea-

---

**3.** We are aware of cases stating that evidence sufficient to prove any of several multiple theories of commission of a crime will support a verdict of guilt. *See, e.g., Turner v. United States,* 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970); *United States v. Murray,* 621 F.2d 1163, 1171 (1st Cir.1980); *Nelson v. State,* 224 Md. 374, 167 A.2d 871, 874 (1961); *State v. Carey,* 42 Wash.App. 840, 714 P.2d 708, 713 (1986); *State v. Baldwin,* 101 Wis.2d 441, 304 N.W.2d 742, 747–48 (1981). There is also a conflict in decisions of the United States courts of appeals concerning whether convictions for multiple-object conspiracies can be upheld even though one or more of the alleged objects did not adequately define a crime. Some sustain such convictions. *E.g., United States v. Papadakis,* 510 F.2d 287, 297 (2d Cir.), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975); *United States v. Tanner,* 471 F.2d 128,

140 (7th Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972); *Moss v. United States,* 132 F.2d 875, 878 (6th Cir.1943). Others overturn them. *E.g., United States v. Carman,* 577 F.2d 556, 566 (9th Cir.1978) (acknowledging a split of authorities on the issue); *United States v. Baranski,* 484 F.2d 556, 560–61 (7th Cir.1973).

We do not pause to consider the extent to which such cases can be reconciled with the result we reach today. We are persuaded that our holding is supported by a wealth of soundly considered decisions in other jurisdictions and, under the facts of the present case, is the only one consistent with the due process requirement that a conviction must be based on proof beyond a reasonable doubt. *See* Comment, *Jury Agreement and the General Verdict in Criminal Cases,* 19 Land & Water L.Rev. 207, 218–20 (1984).

sonable doubt.[4] However, we did note specifically in *People v. Marquez*, 692 P.2d at 1100, and *People v. Ledman*, 622 P.2d at 541, that the evidence was sufficient to support a guilty verdict on each of the alternative theories on which the jury was instructed.

Both logic and precedent lead us to conclude that when a verdict of guilty is returned on a general verdict form, the lack of sufficient evidence to support a guilty verdict based on one alternative requires that the entire verdict be set aside. Therefore, it is necessary for us to consider whether the evidence in the present case is sufficient to support a conviction based on the third alternative method of causing submission of the victim, threats of future retaliation.

### B.

■ The only evidence concerning threats of future retaliation made by the defendant prior to completion of both sexual acts is found in the testimony of the victim relating to the interval between the two acts when she was attempting to comfort her child. The victim testified that during this time the defendant was near the foot of the bed, blocking her in. She related that

> [h]e told me that he had been planning this for a long time and that he had told some people what he was going to do and had made arrangements that if I was to report any of this, that they were going to come and kill me and my son both, and that they would—if it were to go to court, that they would testify that I had invited him over that night.

Literally, the threat was not that the defendant would retaliate if the victim did not submit but that retaliation would result if she reported the incident. A literal interpretation, however, obscures the larger potential of such a threat for creation of an atmosphere so laden with fear and intimidation that the victim would be caused to submit to the defendant's demands. This is especially so where, as here, the death threat relates not only to the victim but also to her young child who is present while the threat is made. It would ignore the reality of the situation to hold that a jury could not find beyond a reasonable doubt that such a threat was an independently sufficient cause of the victim's submission to the second sexual act.[5] *But see*

4. We have made a general statement in several cases involving alternative theories of criminal culpability that evidence establishing any one alternative will support a general verdict. *People v. Marquez*, 692 P.2d at 1100; *People v. Ledman*, 622 P.2d at 541; *People v. Taggart*, 621 P.2d at 1387; *Hernandez v. People*, 156 Colo. 23, 30, 396 P.2d 952, 955 (1964). Those cases addressed the unanimous verdict question and were not focused on the constitutional requirement that proof beyond a reasonable doubt is necessary to sustain a conviction. We did not mean to imply in those cases that an alternative theory could be submitted to a jury without adequate evidence to support it. To the extent that such an implication is to be found in that language, we reject it as contrary to the requirements of due process of law. *See, e.g., In re Winship; People ex rel. Juhan v. District Court.*

5. The defendant argues that the victim herself denied that threats of future retaliation caused her to submit to the second sexual act. He bases this argument on the following testimony of the victim on cross-examination by defense counsel:

> Q. He threatened you in two ways: One is if you screamed, he was going to kill you?

> A. Yes.
> Q. Or it gives him a reason to kill you, I guess.
> A. Uh-huh.
> Q. And then apparently after it was over—that is, after the acts were over—that if he got in any trouble, his friends would get you or words to that effect?
> A. Yes.
> Q. Okay. So that what you were submitting to in the acts of sexual aggression was his threat to kill you and your son, I assume?
> A. Yes.
> Q. And not the fact that if anything happened, his friends would get you?
> A. I'm sorry. Could you repeat that?
> Q. Yes. That conversation—that is, if anything happened to him, his friends would get you—that occurred after the acts of sexual intimacy?
> A. Yes.
> Q. So that didn't have any bearing on whether or not you submitted to him?
> A. *No.* It happened after the first time that he attacked me. He told me that when I was holding my son in the bedroom, is when he told me something about his friends—(Emphasis added)

*Bigcraft v. People*, 30 Colo. 298, 306, 70 P. 417, 419 (1902) (threats of future retaliation if victim reported sexual acts held insufficient evidence that victim's submission was induced by such threats). Moreover, the defendant's violent conduct prior to that time provided an adequate basis for the jury to find that the victim "reasonably [believed] the actor would execute these threats." § 18–3–402(c), 8B C.R.S. (1986). We conclude, therefore, that there was sufficient evidence to support a jury verdict on the third alternative manner of causing the victim's submission, as well as on the first two.

### III.

The defendant contends that the trial court erred in denying his motion to disqualify the trial judge on the basis of prejudice. We find no merit in this argument.

On July 26, 1982, prior to trial, the defendant filed a written motion to disqualify the trial judge based upon findings made by that judge on July 13, 1982, in a domestic relations action to which the defendant was not a party. The issue in that case involved temporary custody of two minor children, and the court made the following findings, which provided the basis for the defendant's motion to disqualify in the present case:

> The evidence clearly indicates to me, both as I've heard it in open court and in chambers [interviews with the children], that [the mother] has been cohabiting with Jarvis James.
> The law is clear that that should not affect the Court's decision as to placement of a child and it does not in this case. However, to the extent that Jarvis James is not a proper influence for the children, without regard to his relationship and to things that necessarily would flow from that or probably would flow from that in terms of activities between himself and the petitioner, his furnishing marijuana for the use of himself and [the mother], would indicate to the Court that

it's probably not a good idea that any others [sic] of the children be placed in the home on a temporary basis.

In his motion, the defendant asserted that the court had concluded that he was a user and supplier of marijuana for himself and the woman with whom he was living, that this conclusion was incorrect, and that in the event James were to be found guilty of the sexual assault charges, the judge "could not help but to be prejudiced in the sentencing process from the information elicited in [the domestic relations case]."

The trial court denied the motion on the basis that the allegation of prejudice was conclusory and not justified by the facts set forth in the motion. The court later elaborated on that ruling by noting that the defendant would not be bound by the factual findings in the domestic relations case but that the truth of the matter could be determined based upon an evidentiary presentation at the sentencing hearing in the event of the defendant's conviction. The court of appeals agreed that the motion to disqualify was legally insufficient. We are of the same opinion.

The disqualification of judges in criminal cases is governed by section 16–6–201, 8A C.R.S. (1986), which states, in pertinent part:

> (1) A judge of a court of record shall be disqualified to hear or try a case if:
>
> . . . .
>
> (d) He is in any way interested or prejudiced with respect to the case, the parties, or counsel.
>
> . . . .
>
> (3) A motion for change of judge on any ground must be verified and supported by the affidavits of at least two credible persons not related to the defendant, stating facts showing the existence of grounds for disqualification. If the verified motion and supporting affidavits state facts showing grounds for disquali-

---

The answer "no" in the woman's last-quoted response seems to be a denial of the defense counsel's suggestion that the threats of retalia-

tion occurred after both sexual acts had been completed. The last-quoted question seems left unanswered.

fication, the judge must enter an order disqualifying himself....

Crim.P. 21(b) contains essentially the same provisions. The appropriate standard to be used by a judge when reviewing a motion to disqualify was discussed by this court in *People v. Botham*, 629 P.2d 589 (Colo. 1981):

> As a matter of judicial policy, the court must accept as true the facts stated in the motion and affidavits for disqualification of a judge. [Citations omitted.]
>
> In reviewing the motion and affidavits, both the actuality and appearance of fairness must be considered. Even where the trial judge is convinced of his own impartiality, the integrity of the judicial system is impugned when it appears to the public that the judge is partial:
>
> > "The question never centers on the reasonableness or fairness of the image being created, but rather on the actual character of that image. If the actual character of the image created results in the appearance of bias or prejudice, a trial judge should recuse himself or herself, as such an appearance can be as damaging to public confidence in the administration of justice as would be the actual presence of bias or prejudice." *A.B.A. Standards for Criminal Justice*, 6–1.7, commentary at 6.20 (2d ed. 1980).

*Id.* at 595. *Accord Estep v. Hardeman*, 705 P.2d 523 (Colo.1985); *People v. District Court*, 192 Colo. 503, 560 P.2d 828 (1977).

■ When a party moves to disqualify a judge for prejudice, the judge must consider only the legal sufficiency of the motion and supporting affidavits. *E.g., Estep v. Hardeman*, 705 P.2d at 526; *Carr v. Barnes*, 196 Colo. 70, 72, 580 P.2d 803, 804 (1978). The judge cannot evaluate the truth or falsity of the allegations in the motion and affidavits; the facts alleged must be accepted as true. *Id.* However, to be legally sufficient, the motion and affidavits must state facts that imply a bias or prejudice that may prevent the trial judge from dealing fairly with the petitioner; it is not enough to proffer conclusory statements that the trial judge is prejudiced. *Id.*

■ The defendant did not assert in his motion to disqualify that the information from the earlier child custody hearing would affect the judge's ability to preside fairly at trial. The alleged prejudice was limited to "the sentencing process." The facts alleged in the motion and in the supporting transcript of the judge's ruling in the domestic relations proceeding[6] were simply that the trial court had made the factual findings quoted above in an unrelated civil case. We do not believe that such findings—that the defendant used marijuana and furnished it to the woman with whom he was living—made in an unrelated case to which James was not a party, are sufficient to support "the inference that the [judge's] impartiality might reasonably be questioned," *Estep v. Hardeman*, 705 P.2d at 526, or to create an appearance of bias or prejudice in this sexual assault prosecution involving a different woman. We agree with the court of appeals that the findings of the judge in the domestic relations proceeding do not reflect any "predisposition as to defendant's guilt, prejudgment of the case, or potential sentence." *People v. James*, 694 P.2d at 359.[7] The motion to disqualify is legally insufficient. *See* § 16–6–201, 8B C.R.S. (1986); Crim.P. 21(b); *Carr v. Barnes*, 196 Colo. 70, 580 P.2d 803.

## IV.

The defendant also argues that the trial court erred in admitting the testimony of

---

6. The trial judge accepted the transcript in lieu of affidavits. The parties did not object to this procedure in the trial court or on appeal.

7. The court of appeals buttressed its conclusion that the motion to disqualify was properly denied by noting that the sentence actually imposed reveals no bias or prejudice by the trial judge. We emphasize, however, that such motions must be determined on the basis of the facts alleged. *E.g., People v. Botham.* We disapprove of the use of post-motion developments to evaluate the legal and factual sufficiency of such a motion.

Dr. Darvin Ritchie and certain testimony of Dr. Gary Ritchie over the defendant's objections. The prosecution called the two physicians to testify as to the physical and emotional state of the victim when she was under their care subsequent to the sexual assault. The first witness was Dr. Gary Ritchie, who examined and treated the victim in the hospital emergency room immediately after the assault. He testified that except for a bite mark on her tongue and on the inside of her cheek, he observed no physical injuries. He testified that she was crying upon admission to the hospital, seemed very anxious and upset, but was cooperative. She was discharged the same morning. Dr. Gary Ritchie next was involved when either the victim or a friend of hers telephoned him stating that the victim had been very upset, was unable to eat or sleep, and needed a prescription for tranquilizers. He prescribed a tranquilizer. The victim called again two days after the assault, complaining that the medication had not worked. She stated that she was much worse, and Dr. Ritchie advised her to enter the hospital, which she did. He saw her briefly upon admission and again the following day. He stated:

[S]he, again, appeared very anxious. She would cry frequently. She would talk about the incident as though she were speaking in the third person, as though it were happening to someone else other than herself. She was just very upset. It was very difficult to talk to her about it.

. . . .

[S]he appeared very anxious, very distraught. She had been unable to sleep. She looked as though she hadn't slept. She just looked like a person in distress.

The prosecution next called Dr. Darvin Ritchie, the victim's regular attending physician, who performed surgery on her on July 13 to remove an open safety pin that she had accidentally swallowed while hospitalized. The defendant raised timely objections to the testimony of Dr. Gary Ritchie concerning the second hospitalization and to all of the testimony of Dr. Darvin Ritchie. The objections were based on the contention that evidence of the victim's emotional condition several days subsequent to the assault and of her surgery was irrelevant and prejudicial. The testimony was allowed and included Dr. Darvin Ritchie's observation that, while he recognized that the victim was in a lot of pain because of the safety pin, she was exhibiting "totally different behavior" than he had ever seen before.

Relevant evidence is defined in CRE 401 as follows: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence is generally admissible but may be excluded under the following standards set forth in CRE 403: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." As we held in *People v. Lowe*, 660 P.2d 1261, (Colo.1983), "[a]ppellate review of relevancy decisions is limited because we must assume the maximum probative value that a reasonable fact finder might give the evidence and the minimum unfair prejudice to be reasonably expected." *Id.* at 1264 (citation omitted).

■ Our review of the record satisfies us that the prejudicial effect of the matter of the safety pin was minimal in light of Dr. Darvin Ritchie's testimony that the victim swallowed it accidentally and the district attorney's statement that he would stipulate to that fact. The testimony regarding the victim's emotional state during the second hospitalization could reasonably be considered to have some probative value, however slight, on the question of whether the victim had been threatened by the defendant. It is also unlikely that this testimony could be considered prejudicial, as it was in large degree merely cumulative of the testimony of Dr. Gary Ritchie con-

cerning the victim's emotional state when he saw her at the hospital shortly after the assault. Therefore, assuming the maximum probative effect and the minimum unfair prejudice to be attributed the evidence to which objection was made, we conclude that the trial court did not abuse its discretion in allowing the challenged testimony of the doctors.

We affirm the judgment of the court of appeals.