**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Michael W. HANSON, Defendant– Appellant.**

No. 94CA0316.

Colorado Court of Appeals, Div. II.

April 4, 1996.

Rehearing Denied May 16, 1996.

Certiorari Denied Nov. 25, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Beverly Fulton, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge JONES.

Defendant, Michael W. Hanson, appeals the judgment entered on a jury verdict finding him guilty of one count of menacing with a deadly weapon. We affirm.

On July 1, 1993, defendant and his family accompanied defendant's cousin and son for an afternoon of fishing at Griffith Lake in Mesa County. The dirt road off the highway, leading to the lake, and the areas along the road were very wet and muddy owing to runoff from snow and ice and the high level of the lake. At a certain point, a mudhole approximately 15 square feet in size took up the entire road. To get to the lake, defendant drove off the road, through the mud, and around the mudhole.

While at the lake, the families fished and drank beer, and defendant also performed target practice with his rifle. Near the end of their outing, the two families parked their two cars on the road in front of the mudhole while defendant and his cousin hiked back to retrieve the family dog which had been left at the lake. At the same time, the victim and his father approached the lake on the road from the opposite side of the mudhole and became agitated because defendant and his cousin had parked their vehicles in a manner so as to prevent them from proceeding around or through the mudhole and to the lake.

Upon returning with the dog, defendant navigated his vehicle around the mudhole and arrived on the other side. While the victim then proceeded to drive through the mudhole in his vehicle, defendant's cousin also tried to navigate the mudhole in the opposite direction. In so doing, and in attempting to avoid the victim's moving vehicle, the cousin's vehicle became stuck adjacent to the mudhole. During this time, the defendant and the victim exchanged unfriendly words. The victim then proceeded to the lake.

After attempting to free his cousin's vehicle from the mud, defendant, in frustration, retrieved his rifle and shot one time at a stick floating on the lake. The victim and his father heard the shot and saw a splash in the water about 25 yards from their location. They became somewhat concerned about the shot.

Thereafter, defendant's cousin asked the victim and his father for assistance in freeing his vehicle from the mud. While the cousin told the victim and his father that they should help in freeing his vehicle from the mud, defendant approached the three men carrying his rifle. The victim, seeing defendant and remembering the earlier rifle fire,

refused to assist in freeing the vehicle from the mud, and a heated argument ensued.

While the testimony is in conflict, it is generally agreed that defendant and his cousin returned to their vehicles and after another attempt to free the stuck vehicle, the cousin again approached the victim to ask for assistance. Defendant fired a second shot at the water during this conversation.

At some point during one of the conversations, defendant held his rifle like a baseball bat in a threatening manner toward the victim's father. In addition, in response to the victim's father challenging defendant and his cousin to a fight and claiming to have a pistol in the victim's vehicle, defendant pointed his rifle at the victim and commented that his rifle would "blow away" any pistol. During this part of the confrontation, the cousin told defendant: "Just shoot them!" and, "Let's get the hell out of here."

In order to prevent the arguments from escalating further, the victim feigned agreement to assist in freeing the stuck vehicle from the mud. But as he approached the mudhole in his vehicle, rather than stopping to help, he proceeded past the mudhole and the disabled vehicle, continued driving to the main highway, and later reported the incident to the police. Defendant was charged with two counts of felony menacing as to the victim and the victim's father, respectively.

### I.

Defendant first contends that the trial court erred in instructing the jury concerning the multiple counts. We disagree.

■■■ Initially, we note that defendant did not object at trial to the instructions challenged on appeal and, therefore, his contention is subject to the plain error standard of review. *People v. Williams*, 899 P.2d 306 (Colo.App.1995). Plain error occurs when we can say with assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on reliability of the judgment of conviction. *People v. Kruse*, 839 P.2d 1 (Colo.1992).

Defendant argues that the jury instruction concerning multiple charges, when read in conjunction with the instruction on self-de-

fense, and in light of the facts, violated his constitutional right to due process concerning the burden on the prosecution to prove beyond a reasonable doubt that he did not act in self-defense.

■■■ The jury instruction on self-defense provided that it is an affirmative defense to the crime of menacing with a deadly weapon if defendant used physical force upon another person "in order to defend himself or a third person from what he reasonably believed to be the use or imminent use of unlawful physical force by the [victims]." Defendant does not challenge the propriety of this instruction.

■■■ The multiple charges instruction provided that "each count charges a separate and distinct offense and the evidence and the law applicable to each count should be considered separately, uninfluenced by your decision as to any other count. . . ."

■■■ Defendant argues that while the self-defense instruction instructs the jury to consider any unlawful physical force jointly by the victim and his father, the multiple charges instruction requires the jury to consider any actions by them separately and independently of the actions of the other. He further argues that these instructions, read together, prevented the jury from considering the victim and his father as acting together as a collective unlawful force in determining whether the prosecution had demonstrated that defendant did not act in self-defense.

We conclude that defendant's contention is based on a misinterpretation of the multiple charges instruction. That instruction only requires the jurors to consider each charge a separate and distinct offense, and that the evidence as to each count, and the determination as to guilt as to each count, should be considered by them separately and without influence from the jury's decision as to the other count. This instruction in no way prevented the jurors from considering evidence that relates to either count simply because such evidence also relates to the other count. In other words, any evidence which relates to

both counts, under this instruction, could still be considered by the jurors for each count.

Additionally, the record does not reveal that reference to both the victim and his father in the self-defense instruction caused the jury to violate the command of the multiple charges instruction. The jury could appropriately, under the circumstances of this case, consider each separate charge of felony menacing and, as to each, separately consider the affirmative defense. Certainly, nothing in the instructions prohibits the jury from considering the affirmative defense as to each respective charge separately.

The multiple charges instruction informed the jury that simply because it might determine defendant to be guilty or not guilty as to one count, it should not automatically assume defendant to be guilty or not guilty on the other count. Furthermore, the jury's understanding of the instruction is evident from its verdict finding defendant guilty on one count of felony menacing but not guilty on the second count.

We conclude that the respective instructions are proper statements of the law and that the trial court met its duty to instruct on all matters of law. *See People v. Hardin,* 199 Colo. 229, 607 P.2d 1291 (1980).

Accordingly, we determine that plain error did not occur concerning this contention.

## II.

Defendant next contends that the trial court erred in not requiring the prosecution to elect which incidents supported each of the felony menacing charges or in failing to instruct the jury on verdict unanimity. We disagree.

Again we note that, since defendant did not request that the prosecution make an election and did not submit a unanimity instruction, we must apply a plain error standard of review. *People v. Williams, supra.*

Defendant argues that, under *People v. Estorga,* 200 Colo. 78, 612 P.2d 520 (1980), when there is evidence of many acts, any one of which would constitute the offense charged, the prosecution may be compelled to select the transaction on which it relies for a conviction or, in the alternative, that the jurors should be instructed that in order to convict the defendant they must either unanimously agree that defendant committed the same act or acts or that defendant committed all the acts described by the victim and included within the time period charged. *See Thomas v. People,* 803 P.2d 144 (Colo.1990).

Defendant's reliance on *Estorga* and its progeny is misplaced. *Estorga* involved charges against a defendant for sexual assaults on a child over several months. The prosecution, however, failed to select a specific act or acts upon which the jury could convict. Therefore, our supreme court concluded that it was reversible error to fail to require the prosecution to select a specific act upon which it relied for conviction when there was evidence of more than one transaction and there could be some doubt as to which transaction the jurors relied upon for conviction.

In *Thomas v. People, supra,* our supreme court noted that when the evidence does not present a reasonable likelihood that jurors may disagree as to which act defendant committed, the prosecution need not designate a particular instance upon which to argue for conviction. However, if the prosecutor does not designate an instance, the jurors should be instructed that they must either unanimously agree that the defendant committed the same act or that the defendant committed all of the acts described by the victim.

However, in *People v. Collins,* 730 P.2d 293 (Colo.1986) our supreme court held that, unlike in *Estorga* and *Thomas* in which the prosecution alleged numerous acts over an extended period of time to support the charges against the defendants, a trial court need not require the prosecution to specify the acts which were the basis for the separate counts when the crimes charged occurred in a single transaction.

 Here, although the record reflects that defendant and his cousin had engaged in two separate confrontations with the victim and his father, the confrontations occurred in the same location and within a few minutes of each other, and arose out of the same set of circumstances and in conjunction with the

same dispute. Thus, all of defendant's actions, and the charges stemming therefrom, arose out of a single transaction. Under these circumstances, we conclude that, as in *Collins,* the trial court did not commit plain error in not requiring the prosecution to specify the acts which were the basis for the separate counts charged against defendant.

## III.

Finally, defendant contends that the prosecution failed to prove each of its various and alternative theories of defendant's guilt for the crimes charged beyond a reasonable doubt. We find no merit in this argument.

Again, because defendant failed to raise objections during the trial based on the allegations of error contended here, a plain error standard of review applies to this contention. *People v. Williams, supra.*

■ Relying on *James v. People,* 727 P.2d 850 (Colo.1986), defendant argues that when the prosecution presents a case to a jury on alternative theories under which a defendant can be found guilty of the crime charged, and the jury returns a general verdict of guilty, to withstand a due process challenge the evidence must be sufficient to support a guilty verdict under each and every theory. Defendant's reliance on *James,* however, is misplaced.

■ The rule enunciated in *James* applies only when a defendant is prosecuted for an offense which consists of alternative and independent legal elements under which a defendant must only be found to have violated one of the alternative elements in order to be guilty of the crime charged. Since defendant does not contend that the evidence failed to establish that he both knowingly placed or attempted to place another person in fear of imminent serious bodily injury, as required by the menacing with a deadly weapon charge, *James* does not apply.

Defendant argues that because the jury found him guilty of menacing the victim but not guilty of menacing the victim's father, the jury could have been relying on his conduct to convict him of menacing the victim but also relying on the same conduct to acquit him of menacing the victim's father on the grounds of self-defense. Defendant argues that his acquittal on one count of menacing accompanied by the guilty finding as to the other count of menacing necessarily demonstrates that the prosecution failed to prove each of its various theories beyond a reasonable doubt.

■ We conclude that defendant's argument amounts to a challenge to the sufficiency of the evidence. Substantial evidence was presented at trial that defendant fired his rifle two times during the confrontations, pointed it in a threatening manner toward the victim, and that the victim was fearful for his life. This evidence amply supports the jury finding of guilty of menacing the victim.

■ On the other hand, the most substantial evidence which might support a charge of menacing the victim's father was that the defendant held his rifle in a club-like manner when arguing with the father. Furthermore, the prosecution did not present any evidence that the father was in fear of imminent serious bodily injury as a result of defendant's actions. This evidence supports the jury verdict of not guilty of menacing the father.

Therefore, the record reflects that substantial evidence supports the jury verdicts here and, on appeal, we will not overturn the judgments entered on those verdicts. *See Kogan v. People,* 756 P.2d 945 (Colo.1988).

Accordingly, the judgment of conviction is affirmed.

CRISWELL and HUME, JJ., concur.